

*U.S. Department of Justice*

*United States Attorney*
*District of Massachusetts*

---

*Main Reception: (617) 748-3100*

*United States Courthouse, Suite 9200*
*1 Courthouse Way*
*Boston, Massachusetts  02210*

June 16, 2005

***VIA FACSIMILE (w/o enclosures)***
***VIA FEDERAL EXPRESS (w/ enclosures)***

Melvin Norris, Esq.  **(Fax: 508-358-7787)**
260 Boston Post Road
Suite 9
Wayland, MA 01778

Alan J. Black, Esq.  **(Fax: 413-739-0446)**
Alan Black, Attorney-at-Law
1383 Main Street
Springfield, MA 01103

> Re:   United States v. Nydia Bernabel, a/k/a "Nonni," a/k/a "Nanni," and Matthew Marsh,  Criminal No.  4:05-cr-40025-FDS

Dear Attorneys Norris and Black:

Pursuant to Rule 116.1 of the Local Rules of the United States District Court for the District of Massachusetts, the government hereby provides you with the following automatic discovery in the above-referenced case:

A. Rule 16 Materials

   1. Statements of Defendant under Rule 16(a)(1)(A)

   a. Written Statements

There are no relevant written statements made by the defendants Nydia Bernabel, a/k/a "Nonni," a/k/a "Nanni," ("Bernabel") and/or Matthew Marsh ("Marsh"), hereinafter collectively referred to as "Defendants," in the possession, custody, or control of the government, the existence of which is known to the undersigned attorney for the government.
   b. Recorded Statements

As listed below under Section D, consensual audio and video recordings were made of personal meetings and/or telephone conversations involving Defendants. Copies of the recordings in the possession, custody, or control of the government are enclosed at Bates Nos. 149-65.

    c.    <u>Grand Jury Testimony of the defendant</u>

Neither Bernabel nor Marsh testified before a grand jury in relation to this case.

    d.    <u>Oral Statements to then Known Government Agents</u>

The government is unaware of any oral statements made by Defendants before or after arrest, in response to interrogation by a person then known by Defendants to be a government agent, which the government intends to use at trial. If the undersigned attorney for the government becomes aware of any such statements, she will advise you at once.

    2.    <u>Defendant's Prior Record under Rule 16(a)(1)(B)</u>

A copy of Bernabel's prior criminal record and related documents is enclosed at Bates Nos. 116-29. A copy of Marsh's prior criminal record and related documents is enclosed at Bates Nos. 130-48.

    3.    <u>Documents and Tangible Objects under Rule 16(a)(1)(C)</u>

Enclosed and listed below are copies of papers, documents and other tangible items that are within the possession, custody, or control of the government, and which are material to the preparation of Defendants' defense or are intended for use by the government as evidence in chief at the trial of this case, or were obtained from or belong to Defendants. The originals may be inspected by contacting the undersigned Assistant U.S. Attorney and making an appointment to view the same at a mutually convenient time:

    a.    Reports of investigation (DEA-6 reports) relating to this matter are enclosed at Bates Nos. 1-74, 77;

    b.    Cocaine base, also known as "crack cocaine," seized during the course of this investigation as more fully described in DEA-7 lab reports attached hereto as Bates Nos. 80-88;

    c.    All of the documents and/or tangible items (including but not limited to the aforementioned audio and video recordings) assigned "N" exhibit numbers and more fully described in DEA-7a reports attached hereto as Bates Nos. 89-115;

    d.    Copies of photographs attached as Bates Nos. 98-99, 125-27, 141-42, 145; and

  e.  Audio and video recordings of phone calls and/or meetings with Defendant (Bates Nos. 149-65).

  4.  <u>Reports of Examinations and Tests under Rule 16(a)(1)(D)</u>

Copies of the drug analysis and weight reports regarding the controlled substances seized in this investigation (DEA-7 lab reports) are enclosed at Bates Nos. 80-88.

B.  <u>Search Materials under Local Rule 116.1(C)(1)(b)</u>

No search warrants were conducted of property belonging to Defendants in this case. On November 9, 2004, however, Fitchburg Police Officer Kenneth Gaetz, Jr., arrested Bernabel and Marsh for outstanding default warrants shortly after they sold crack cocaine to UC2. At the time of their arrest (which took place only one-half hour after they sold crack cocaine to UC2), Bernabel and Marsh were in the same Jeep Grand Cherokee used during their meeting with UC2 and Bernabel was in possession of serialized U.S. currency that matched the OAF money that UC2 used to purchase the crack cocaine from Defendants. These U.S. currency bills were seized from Bernabel during booking. A copy of the related reports and materials (including a copy of the U.S. currency at issue) is enclosed at Bates Nos. 36-38, 100-06.

Any items seized from Defendants at the time of their arrests for the instant charges may be examined by contacting the undersigned Assistant U.S. Attorney and making an appointment to view the same at a mutually convenient time. Copies of the DEA reports relating to Defendants' arrests on May 11, 2005 (Marsh) and May 13, 2005 (Bernabel) are enclosed at Bates Nos. 74-79.

C.  <u>Electronic Surveillance under Local Rule 116.1(C)(1)(c)</u>

No oral, wire or electronic communications of your client were intercepted by the government in connection with this case pursuant to 18 U.S.C. §§ 2510-2518.

D.  <u>Consensual Interceptions under Local Rule 116.1(C)(1)(d)</u>

A written description of interceptions (as the term "intercept" is defined in 18 U.S.C. § 2510(4)) of oral communications, relating to the charges contained in the indictment made with consent of one of the parties to the communication ("consensual interceptions"), in which Defendants were intercepted or which the government intends to offer as evidence in its case-in-chief is set forth below (the reference to "N" exhibits are to the exhibit numbers assigned by DEA, which are reflected in DEA 7a reports (Bates Nos. 89-115). A copy of all recordings listed below is enclosed herewith at Bates Nos. 149-65.

  **Audio Cassettes**

  1.  <u>N-54; Bates No. 149</u>: October 20, 2004 recorded telephone call between two (2) undercover DEA Agents (hereinafter "UC1" and "UC2") and Dinikue Brown,

3

    a/k/a Charles King, a/k/a "Mouse" ("Brown") regarding the purchase of cocaine base, also known as "crack cocaine" (hereinafter, "crack cocaine").

2. <u>N-75; Bates No. 151</u>:   November 2, 2004 recorded telephone call between a confidential witness ("CW2") and Brown to arrange for the purchase of crack cocaine.

3. <u>N-96; Bates No. 150</u>:   November 9, 2004 recorded telephone call between a confidential witness ("CW3") and Defendant Bernabel to arrange for the purchase of crack cocaine.

4. <u>N-114; Bates No. 152</u>:   November 16, 2004 recorded conversation between UC1, UC2, and Brown during the purchase of crack cocaine from Brown.

5. <u>N-119; Bates No. 153</u>:   November 18, 2004 recorded telephone call between CW3 and Brown (over Defendant Bernabel's cell phone) to arrange for the purchase of crack cocaine.

6. <u>N-120; Bates No. 154</u>:   November 18, 2004 recorded conversation between UC2, CW3, and Brown during the purchase of crack cocaine from Brown.

7. <u>N-126; Bates No. 155</u>:   November 29, 2004 recorded telephone calls between UC2 and Brown (over Defendant Bernabel's cell phone) to arrange for the purchase of crack cocaine.

8. <u>N-193; Bates No. 156</u>:   February 3, 2005 recorded telephone call between a confidential witness ("CW4") and Brown (over Defendant Bernabel's cell phone) to arrange for the purchase of crack cocaine.

**<u>DVDs</u>**

1. <u>N-39; Bates No. 157:</u>   October 6, 2004 video and audio recorded meeting of initial UC introduction to Brown.

2. <u>N-45; Bates No. 158</u>:   October 13, 2004 video and audio recorded meeting between an undercover DEA Agent (hereinafter "UC1") and Brown during which UC bought crack cocaine from Brown.

3. <u>N-55; Bates No. 159</u>:   October 20, 2004 video and audio recorded meeting between UC1, UC2, and Brown during which UC1 and UC2 bought crack cocaine from Brown

4. <u>N-58; Bates No. 160</u>:   October 21, 2004 video and audio recorded meeting between UC1, a confidential witness ("CW1"), and two (2) couriers, including Veronica Marissa Roman, a/k/a "Leelee"("Roman"), during which UC1 bought

       crack cocaine from Bernabel via the couriers.

5. <u>N-97; Bates No. 161</u>:   November 9, 2004 video and audio recorded meeting between UC1 and Defendants (Bernabel and Marsh) during which UC1 bought crack cocaine from Defendants.

6. <u>N-98; Bates No. 162</u>:   November 9, 2004 video and audio recorded meeting between UC2, CW3, and Defendants (Bernabel and Marsh) during which UC1 bought crack cocaine from Defendants.

7. <u>N-121; Bates No. 163</u>:   November 18, 2004 video and audio recorded meeting between UC2, CW3, and Brown during which UC2 bought crack cocaine from Brown.

8. <u>N-127; Bates No. 164</u>:   November 29, 2004 video and audio recorded meeting between UC2 and Brown during which UC2 bought crack cocaine from Brown.

9. <u>N-194; Bates No. 165</u>:   February 3, 2005 video and audio recorded meeting between UC1, CW4, and Brown during which UC1 bought crack cocaine from Brown.

No transcripts of the above referenced recordings have been created at this time.

E.    <u>Unindicted Coconspirators under Local Rule 116.1(C)(1)(e)</u>

      As to the conspiracy charged in Count One of the Indictment, the following is a list of the names of known unindicted coconspirators:   ***[REDACTED].***

F.    <u>Identifications under Local Rule 116.1(C)(1)(f)</u>

      On November 10, 2004 (the day after Defendants Bernabel and Marsh sold crack cocaine to UC1 and UC2 in two separate meetings), Fitchburg Police Officers who participated in the investigation as DEA Task Force Agents showed a photo image of each Defendant to the UC's, both of whom identified Defendants as the individuals who sold them crack cocaine of November 9, 2004.  A copy of the photo images (which are initialed by both UC1 and UC2), along with the DEA reports relating thereto, is enclosed at Bates Nos. 32-35, 97-99.

      Fitchburg Police Officers who participated in the investigation of Defendants Bernabel and Marsh as DEA Task Force Agents were also able to identify both Defendants based on Defendants' prior interactions with the Fitchburg Police Department.

      In addition, on November 9, 2004, Fitchburg Police Officer Kenneth Gaetz, Jr., arrested

both Bernabel and Marsh for outstanding default warrants shortly after they sold crack cocaine to UC2. At the time of their arrest, Bernabel and Marsh were in the same Jeep Grand Cherokee used during UC2's crack cocaine purchase. Officer Gaetz stopped Defendants for operating the Jeep in an unsafe manner. Upon conducting a civil motor vehicle infraction stop and discovering that Defendants had outstanding default warrants, Officer Gaetz arrested Defendants and identified the operator of the Jeep as Matthew Marsh and the passenger as Nydia Bernabel. A copy of the DEA-6 report related to this arrest and identification is enclosed at Bates Nos. 36-38, 125-29, 141-45.

G.      Exculpatory Evidence under Local Rule 116.2

With respect to the government's obligation under Local Rule 116.2(B)(1) to produce "exculpatory evidence" as that term is defined in Local Rule 116.2(A), the government states as follows:

1.      The government is aware of no evidence that would tend directly to negate Defendants' guilt concerning any count in the Indictment.

2.      The government is aware of no information that would cast doubt on the admissibility of evidence that the government anticipates offering as part of its case-in-chief and that could be subject to a motion to suppress or exclude.

3.      The following promises, rewards, or inducements have been given to the CWs whom the government anticipates calling in its case-in-chief:

Each of the CWs referenced above and/or in enclosed DEA reports has been a confidential informant for DEA in this investigation since in or about September 2004. Each of the CWs has received payments for his/her assistance to DEA in this investigation and has previously received payments from DEA and/or the Fitchburg Police Department for his/her involvement in past, unrelated investigations. The government will supplement this information, including a statement of specific amounts of payments received by each CW for his/her assistance, in subsequent disclosures at the appropriate time. In addition, although the government does not consider them promises, rewards or inducements, each of the CWs has also received reimbursements for expenses relating to his/her participation in these investigations.

Although the government is making the requisite disclosures about the CWs pursuant to Local Rule 116.(B)(1), the government declines to reveal the CWs' names at this time. Under separate cover, the government is sending a declination letter pursuant to Local Rule 116.6 to the Court in regard to this matter.

4.      Except with respect to the CWs, the government is unaware that any of its named case-in-chief witnesses have criminal records. A copy of each of the CW's criminal records will be produced at the appropriate time.

5.      No named percipient witness failed to make a positive identification with respect

to the crimes described in the Indictment.

H.   Other Matters

The government recognizes that its duty of disclosure and discovery as set forth in Local Rule 116 and Rule 16 of the Federal Rules of Criminal Procedure is a continuing one.

In addition, please consider this letter to be a request for reciprocal discovery pursuant to Local Rule 116.1(D) and Fed. R. Crim. P. 16(b). I request that you provide a written response to my request for reciprocal discovery within 10 days of receipt of this letter.

As required by Local Rule 116.4(A)(3), I have, under separate cover, sent one (1) copy of the records containing the consensual recordings to Wyatt Detention Center, 950 High Street, Central Falls, RI, 02863, where Defendant Matthew Marsh is being detained.

I.   Request for Alibi Information

Pursuant to Fed. R. Crim. P. 12.1, the government hereby requests notice of any intention to offer an alibi defense to the charged offense or any of the above-captioned meetings or conversations.

If you have any questions about any of this information or wish to discuss this case with me, please call us at (617) 748-3100.

Very truly yours,

MICHAEL J. SULLIVAN
United States Attorney

By:   ___*/s/ Lisa M. Asiaf*_____
LISA M. ASIAF
Assistant U.S. Attorney

Enclosures (Bates Nos. 1-165)

7