# UNITED STATES DISTRICT COURT
## DISTRICT OF MASSACHUSETTS

|  |  |  |
|---|---|---|
| UNITED STATES OF AMERICA | ) | |
| | ) | |
| v. | ) | Crim. No.  05-40025-FDS |
| | ) | |
| MATTHEW MARSH, | ) | |
| Defendant. | ) | |
| | ) | |

### GOVERNMENT'S MOTION IN LIMINE TO INTRODUCE EVIDENCE OF DEFENDANT'S PRIOR DRUG ACTIVITY

The United States, by and through its undersigned attorneys, hereby moves in limine to introduce at trial evidence of prior drug activity of defendant Matthew Marsh.  This evidence is intrinsic to the conspiracy charged and therefore admissible without regard to the strictures of Rule 404(b).  Even assuming, however, that Rule 404(b) controls, the evidence is probative of the defendant's knowledge about and participation in the charged conspiracy, and his intent to distribute the cocaine base he possessed and thus should be admitted under that rule.  Finally, the government expects that this evidence will also be admissible to corroborate the testimony of its cooperating witness after her credibility has been attacked by the defendant.  Because the additional evidence is admissible on any one of these three bases, the government's motion in limine should be allowed.

## BACKGROUND

On April 28, 2004 a grand jury sitting in this District returned a three-count indictment against defendant Matthew Marsh and his co-defendant Nydia Bernabel, a/k/a "Nonni," a/k/a "Nanni," ("Bernabel"). Both defendants are charged with conspiracy to distribute at least 5 grams of cocaine base, also known as "crack cocaine," in violation of 21 U.S.C. § 846 (Count 1) and two substantive counts of distributing cocaine base, also known as "crack cocaine," in violation of 21 U.S.C. §841(a)(1) (Counts 2 and 3). The two transactions underlying Counts 2 and 3 took place in Fitchburg, Massachusetts, on November 9, 2004.

**(1)  The 1.7-Gram Crack Transaction**

The first transaction occurred at approximately 5:50 p.m., at which time an undercover agent employed by the Drug Enforcement Administration ("UC-1") purchased 1.7 grams of crack cocaine from the defendants. Copies of the DEA reports detailing this transaction are attached hereto as **Exhibit 1**. In sum, at approximately 5:00 p.m., Bernabel agreed to meet UC-1 on Leighton Street in Fitchburg to sell him $320 worth of crack cocaine. UC-1 drove an undercover vehicle to the intersection of Leighton and Kimball Streets, where he waited for Bernabel to arrive. At approximately 5:50 p.m., a 1996 Jeep Cherokee bearing MA License No. 6815MX pulled up next to UC-1's undercover vehicle. UC-1 observed Bernabel in the driver's seat and a heavy set male, who

-2-

was subsequently identified as Marsh, in the passenger seat. When UC-1 asked Bernabel how the crack cocaine rocks looked, Marsh handed a package to Bernabel, who displayed it to UC-1. UC-1 then handed $300 to Bernabel, who passed it to Marsh, who immediately began counting the money.  See **Exhibit 1**, which is incorporated by reference herein.  After completing the sale, Bernabel and Marsh sped away in the Jeep Cherokee at a high rate of speed.  See id. at Bates No. 30.

**(2) The 4.7-Gram Crack Transaction**

The second transaction took place approximately 40 minutes later on Birch Street in Fitchburg, near St. Anthony's School. Copies of the DEA reports detailing this transaction, which are incorporated by reference herein, are attached hereto as **Exhibit 2**.  In short, at approximately 6:30 p.m., a second undercover DEA agent ("UC-2"), who was working with a confidential witness ("CW"), purchased 4.7 grams of crack cocaine from the defendants. Once again, the defendants arrived in a dark colored Jeep Cherokee bearing MA License No. 6815MX, which they pulled up alongside the undercover vehicle.  This time, Marsh was driving the Jeep and Bernabel was riding in the passenger seat.  After the CW introduced UC-2 to Bernabel, she handed a package of crack cocaine to UC-2, who handed her $600 in serialized funds in return.  Marsh then drove the Jeep Cherokee away from the area. See **Exhibit 2**.

Both of the foregoing transactions were audio-recorded, video-recorded, and observed by numerous surveillance agents, including both DEA agents and local Fitchburg Police Officers, who were working collaboratively with DEA as DEA "Task Force Agents" ("TFA's"). See **Exhibit 1** at Bates No. 30 (listing Fitchburg Police detectives assigned as DEA Drug Task Force Agents); **Exhibit 2** at Bates No. 32 (same).

Shortly after the second transaction concluded, a Fitchburg Police Officer pulled the Jeep Cherokee over for a traffic violation. During the car stop, both defendants produced identification to the officer, who issued a citation to Marsh, who was driving the Jeep, for Operating an Unregistered Motor Vehicle in violation of Mass. Gen. L. c. 90, § 9. The officer then asked the FPD dispatcher to run the identifications on Marsh and Bernabel to check for outstanding warrants. The dispatcher did so, and informed the officer that both individuals had outstanding warrants for their arrests.

At this point, Marsh and Bernabel were placed under arrest on the outstanding warrants. They were then separated and transported back to the Fitchburg Police station for booking. During the booking process, (i) a wallet, nose ring, and belt were seized from Marsh, and (ii) jewelry and $570 U.S. currency were seized from Bernabel. After the booking process was complete, one of the Fitchburg TFAs working with DEA traveled to

-4-

the Fitchburg police station to view the items seized from Marsh and Bernabel.  Upon learning that numerous U.S. currency bills were seized from Bernabel's person, the TFA cross-referenced the serial numbers of Bernabel's currency to the serial numbers of the currency used in the undercover crack transactions described above.  See **Exhibit 2** at Bates No. 37.  This cross-referencing confirmed that 18 of Bernabel's bills, totaling $400, matched the bills used by UC-2 in the undercover 4.7-gram crack transaction described above.

**ARGUMENT**

1.    **The evidence of Marsh's previous drug activity is directly relevant to the charged conspiracy.**

The evidence of Marsh's additional drug activity is directly relevant to the conspiracy charged and therefore admissible irrespective of the constraints of Rule 404.

By its terms, Rule 404(b) excludes only extrinsic evidence i.e, "evidence of other crimes, wrongs, or acts" where the probative value of the evidence is limited to the inference of "criminal propensity." United States v. Trinkler, 61 F.3d 45, 56 (1st Cir. 1995).  Circumstantial evidence "intrinsic" to the crime for which the defendant is on trial is simply not governed by Rule 404(b).  United States v. Tutiven, 40 F.3d 1 (1st cir. 1994).  Hence, Marsh's prior drug activity in the weeks and months leading up to the conspiracy is admissible because it is directly relevant to the government's charge that Marsh and

-5-

Bernabel were involved in cocaine base distribution during the period alleged in the indictment.

The First Circuit has repeatedly recognized the importance of such evidence and its admissibility in drug prosecutions. E.g., United States v. Mojica Baez, 229 F.3d 292, 303 (1st Cir. 2000); United States v. Candelaria-Silva, 162 F.3d 698, 705 (1st Cir. 1998); Manning, 79 F.3d at 217. Regardless of whether that evidence is admitted as direct evidence of the conspiracy or as 404(b) evidence of Marsh's intent and knowledge, the jury should be entitled to consider it. See also United States v. Becerra, 97 F.3d 669, 671-72 (2d Cir. 1996)("we have repeatedly approved the admission of firearms as evidence of narcotics conspiracies, because drug dealers commonly keep firearms on their premises as tools of the trade").

Undoubtedly, the defense will argue that any evidence from the time period before the October 2004 to January 2005 period of the cocaine conspiracy alleged in the indictment is irrelevant to support the inference that the November 9, 2004 drug transactions were part of an ongoing course of conduct or otherwise inextricably bound up in the conspiracy alleged and therefore inadmissible. See United States v. Arias Montoya, 967 F.2d 768 (1st Cir. 1992) (admission of 10-year old conviction under 404(b) was erroneous). The government disagrees with that contention for the reasons set forth above.

-6-

**2.   The government's evidence of Marsh's additional cocaine base activities is admissible under Rule 404(b) to show knowledge and intent.**

Even if the Court concludes that the government's additional evidence of Marsh's prior drug activities is not intrinsic to the conspiracy alleged, it is still admissible under 404(b) as "other crimes, wrongs, or acts" probative of motive, intent, plan, and knowledge. See United States v. Manning, 79 F.3d 212, 217 (1st Cir. 1996) (evidence of defendant's prior drug dealing "highly probative of the knowledge and intent elements" of drug charge). Because Marsh is charged with conspiracy, the admissibility of his prior bad acts is governed by the First Circuit's "clear rule" favoring the admission of 404(b) evidence as proof of intent, knowledge, etc. See United States v. Garcia, 983 F.2d 1160, 1173 (1st Cir. 1993) (collecting cases).[1]

The additional evidence of Marsh's drug activities is admissible because it: (1) has "special relevance" in establishing intent and knowledge, and (2) its probative value is

---

[1]     The decision to admit evidence under Rule 404(b) is left to the sound discretion of the trial judge, and will be reversed only for abuse of discretion. Manning, 79 F.3d at 217 (citation omitted). In cases, such as this one, where the 404(b) evidence is probative of issues such as knowledge or intent, "the prohibition against admission of character evidence is construed broadly." Garcia, 983 F.2d at 1172 (citing United States v. Flores Perez, 849 F.2d 1, 4 (1st Cir. 1988)). "While there is a possibility that jurors may draw impermissible inferences about defendant's character or propensity from the fact of his prior conviction, such a possibility is irrelevant to the first step of the admissibility analysis . . . ." Id. (citing United States v. Ferrer Cruz, 899 F.2d 135, 138 (1st Cir. 1988)).

-7-

not substantially outweighed by the risk of undue prejudice.
United States v. Hadfield, 918 F.2d 987, 994 (1st Cir. 1990).[2]

Here, Bernabel will testify to her previous drug
interactions with the defendant, including the specific nature of
those activities and the manner in which any drug dealings were
carried out.  The jury should be permitted to infer that Marsh's
prior drug activities with Bernabel makes it more likely that the
defendant and Bernabel intended and planned to distribute cocaine
base during the course of the conspiracy, and did so knowingly
and intentionally.  This evidence simply makes it more likely
that Marsh knew about and actively participated in the instant
conspiracy.  See, e.g., Manning 79 F.3d at 217 (fact that
defendant "had previously sold cocaine makes it more likely both

---

[2]    Rule 404(b) evidence is deemed to have special
relevance if the evidence "would allow a juror to make at least
one inference probative" of a material issue.  United States v.
Nickens, 955 F.2d 112, 124, 125 (1st Cir.) (citations omitted).
In Nickens, the Court of Appeals affirmed the admission of the
defendant's prior narcotics convictions, concluding that a
reasonable jury could have inferred that the defendant's prior
experience selling cocaine made it more likely that he knew how
drug traffickers operate, and therefore less likely that he had
been duped by two friendly young men who, according to the
defendant, had planted drugs in his suitcase.  Id.  See also
United States v. Moccia, 681 F.2d 61, 63 (1st Cir. 1982) (jury
can "infer that one who lives on a farm with marijuana in the
freezer room and under the chicken coop and has a prior
possession conviction is more likely to know about the presence
of marijuana than one who lives on such a farm and does not have
a past possession conviction"); United States v. Carty, 993 F.2d
1005, 1011 (1st Cir. 1993)(affirming admission of "bad act"
evidence because it "permitted at least one relevant non-
propensity and non-character based inference") (citation
omitted).

that he was aware of the contents of the plastic bags in the briefcase and that he intended to distribute the two bags of cocaine"); Carty, 993 F.2d 1011 (prior drug convictions had "special relevance" to possible intent or plan to distribute).[3]

To the extent that Marsh offers a non-criminal reason for his contacts with Bernabel, the evidence of prior drug interactions with her is admissible for another reason as well. Any testimony about previous drug dealings would contradict this defense, and would permit a jury to appropriately infer that Marsh was an active participant in the conspiracy to distribute cocaine base. Even if Marsh were to offer only a general denial of the charges against him (and did not raise defenses specifically addressed to intent and plan), the United States should still be permitted to introduce evidence of Marsh's additional drug activities to show knowledge, intent, and plan. See United States v. Ferrer-Cruz, 899 F.2d 135, 138-39 (1st Cir. 1990); United States v. Oppon, 863 F.2d 141, 146 (1st Cir. 1988);

---

[3]    The fact that Jimenez' conviction is from 1994 and that his most recent cocaine possession occurred four months after the events at issue here are also no impediment to their admissibility.  See United States v. Wacker, 72 F.3d 1453, 1468-1469 (10th Cir. 1996) (allowing co-conspirators to give 404(b) testimony, in 1993 trial, about defendant's drug-related misconduct dating back to the late 1970's because evidence showed "long-standing pattern of drug activity" and was "integrally related to the criminal conduct charged in the indictment."); United States v. Brown, 923 F.2d 109 (8th Cir. 1991)(mere fact that the wrongful conduct occurred... after the offense charged does not affect 404(b) analysis).

-9-

United States v. LaTorre, 922 F.2d 1, 8 (1st Cir. 1990).
Accordingly, the evidence bears "special relevance" to the issues
in this case.

Admission of the additional cocaine trafficking evidence
will also provide the jury with probative evidence, the value of
which is not substantially outweighed by the danger of unfair
prejudice.[4] Here, Marsh's drug activities prior to the events at
issue bear heavily on whether the defendant knowingly
participated in the charged conspiracy. See Manning 79 F.3d at
217 (defendant's statements regarding prior drug dealing "highly
probative" of knowledge and intent as to drug distribution in
present case); Carty, 993 F.2d 1005 (defendant's post-arrest
statements relating to cocaine source probative of intent and
opportunity to possess and distribute cocaine); Hadfield, 918
F.2d at 995 (defendant's prior narcotics activities of "great"
probative value because they relate to knowledge and intent,
disputed issues critical to guilt or innocence).

Moreover, the probative value of the evidence is not

---

[4]    In balancing the probative value and risk of undue
prejudice of a defendant's prior bad acts, a district court
should bear in mind that Rule 404(b) is a rule of inclusion, not
exclusion. United States v. Carty, 993 F.2d at 1011 (citations
omitted) (emphasis added). Thus, the analysis under Rule 403 is
not whether the defendant is prejudiced by the admission of prior
convictions, but whether the defendant suffers unfair prejudice.
Nickens, 955 F.2d at 125 (citations omitted) (emphasis added).
See, e.g., Garcia, 983 F.2d at 1173 (defendant's drug prior
arrest admissible because probative value not substantially
outweighed by danger of unfair prejudice).

substantially outweighed by any risk of unfair prejudice.

Although evidence of other drug activities invariably prejudices

a defendant, "the prejudice is frequently outweighed by the

relevancy of the evidence when a defendant's knowledge or intent

is a contested issue in the case." United States v. Francesco,

725 F.2d 817, 822 (1st Cir. 1984) (citations omitted).  "The fact

that a piece of evidence hurts a party's chances does not mean it

should automatically be excluded, [or] there would be precious

little left in the way of probative evidence in any case."

Carty, 993 F.2d at 1011 (quoting Onujioqu v. United States, 817

F.,2d 3, 6 (1st Cir. 1987)).

Finally, the Court can minimize any potential danger of

unfair prejudice caused by the admission of this evidence by

issuing a limiting jury instruction regarding the proper

relevance of the evidence.  The First Circuit has approved the

use of such limiting instructions as an appropriate means of

protecting a defendant against the possibility that a jury might

draw improper conclusions from a the admission of prior bad acts

evidence.[5]

---

[5]    See, e.g., Garcia, 983 F.2d at 1173 ("district court
handled the prior acts evidence with care, providing the jury
with a limiting instruction . . . and again instructing the jury
of the scope of prior acts evidence in his final charge.");
Nickens, 955 F.2d at 125-126 ("given that the court minimized
prejudice to [defendant] by giving clear limiting instructions to
the jury, we are satisfied that the district court did not abuse
its discretion in admitting the evidence of [defendant's] prior
(continued...)

**3.   Evidence of Marsh's additional drug activity is admissible because it will corroborate the testimony of a key government witness.**

At trial, the defense may seek to impeach the testimony of Marsh's alleged co-conspirator and cooperating government witness, Bernabel.  Once Bernabel's credibility has been called into question, any evidence of Marsh's prior drug dealings is admissible to corroborate her testimony.  For example, Bernabel is expected to testify about her method, or modus operandi, of dealing the cocaine base.  Once her credibility is called into question by, among other things, cross-examination about her drug-related activities and the government's evidence about what Marsh did both before and during the time of the conspiracy alleged should be admitted.  See United States v. Figueroa, 976 F.2d 1446, 1454 (1st Cir. 1992)(rule 404(b) permits introduction of evidence for purely corroborative purposes on matters "significant to the government's case"); United States v.

---

[5]   (...continued)
drug conviction.").  The limiting jury instructions from Garcia and Nickens, which were approved by the First Circuit, are attached collectively as Attachment 1.  With respect to the instructions in Nickens, the First Circuit noted:

> Counsel on both sides expressed their satisfaction with this instruction in a bench conference with the judge.  In its final instruction to the jury, the court repeated the same limiting instruction about the prior crimes evidence that it had given before.

Nickens, 955 F.2d at 126.

<u>Blakely</u>, 942 F.2d 1001, 1019 (5th cir. 1995) (once credibility of government witness had been challenged by defense, 404(b) evidence to corroborate was admissible); <u>United States v. Everett</u>, 825 F.2d 658, 660 (2nd Cir.1987) (admitting 404(b) evidence for corroborative purposes where the if the corroboration is "direct and the matter corroborated is significant"). <u>See also</u> <u>United States v. Pitts</u>, 6 F.3d 1366, 1371 (9th cir. 1993) (adopting <u>Everett</u> rule and permitting use of 404(b) evidence to corroborate of government cooperator who had been subject to cross-examination and offered only direct evidence of defendant's involvement in the distribution of cocaine).

## CONCLUSION

Based on the foregoing, the government respectfully requests that it be permitted to offer evidence of Marsh's prior drug activities in evidence at trial.

Respectfully submitted,

MICHAEL J. SULLIVAN
United States Attorney

By:    **/s/ Lisa M. Asiaf**
LISA M. ASIAF
Assistant U.S. Attorney

Dated: August 1, 2006

### <u>CERTIFICATE OF SERVICE</u>

I hereby certify that this document filed through the ECF
system will be sent electronically to the registered participants
as identified on the Notice of Electronic Filing (NEF) and paper
copies will be sent to those indicated as non-registered
participants on August 1, 2006.


<u>    **/s/ Lisa M. Asiaf**        </u>
LISA M. ASIAF

**LIMITING RULE 404(b) JURY INSTRUCTION**


<u>United States v. Garcia</u>, 983 F.2D 1160, 1171-1172 (1ST Cir.

1993):

> . . . Mr. Foreman and members of the jury, sometimes
> evidence is admissible for one purpose, but it's not
> admissible for another purpose.  So, the Court has to
> allow the evidence in because it's relevant on some
> point in the case.  But I have to advise you, as
> jurors, that you can't consider it on some other point
> in the case.

> The rule of evidence that's involved is rule 404(b)
> which relates to other crimes or wrongs, prior bad acts
> as it's often referred to.  Evidence of other crimes,
> wrongs or acts is not admissible to prove the character
> of a person in order to show action in conformity
> therewith.  It may, however, be admissible for other
> purposes such as proof of motive, opportunity, intent,
> preparation, plan, knowledge, identity, or absence of
> mistake or accident.  That's the rule.  What it means
> is that, in a criminal trial for an offense you can't
> bring in evidence of other offenses, just to show that
> the defendant is a bad person and is likely to have
> committed this offense.  That's not admissible for that
> purpose.  However, it is admissible to show knowledge
> or intent or plan.

> I have ruled that this evidence is admissible in this
> case against [the defendant] because two of the issues
> in the case relate to his knowledge and his intent.
> First of all, he has to have knowing possession of the
> cocaine in this case, and also, he is charged with not
> only knowing possession but possession with intent to
> distribute.  And so, this evidence relates to his
> knowledge about cocaine and whether he knowingly
> possessed it in that apartment on Gallatin Street, and
> also, if he possessed it, whether he possessed it with
> intent to distribute.

> So, you may consider this evidence of prior acts by the
> defendant, [     ], only on the question of his
> knowledge and intent in this case; and the United
> States has the burden of proving those elements beyond
> a reasonable doubt.

## **LIMITING RULE 404(b) JURY INSTRUCTION**

<u>United States v. Nickens</u>, 955 F.2d 112, 125-126, n. 8 (1st Cir.):


    I instruct you that evidence of those [defendant's prior drug sales] is not presented to you and you should not consider it to prove that because defendant was guilty of those charges you are now considering.

    The transactions in California will be presented to you only to show possible knowledge and intent to commit the present offense, and that is all.  They are not presented to you to show bad character or a pattern of conduct or propensity to commit this type of crime.

# **<u>EXHIBIT 1</u>**

U.S. Department of Justice
Drug Enforcement Administration

## REPORT OF INVESTIGATION

Page 1 of 4

| 1. Program Code MET-100 | 2. Cross File | Related Files | 3. File No. ▮▮▮▮▮▮ | 4. G-DEP Identifier ▮▮▮▮▮ |
|---|---|---|---|---|
| 5. By: S/A Steven C. Story At: Boston, MA | | | 6. File Title ▮▮▮▮▮▮▮▮▮ | |
| 7. ☐ Closed ☐ Requested Action Completed ☐ Action Requested By: | | | 8. Date Prepared 11-10-2004 | |

9. Other Officers:

10. Report Re: Undercover meeting with Nydia "Nanni" BERNABEL on 11-09-2004 in Fitchburg, MA and the resulting Acquisition of Exhibit 38 (crack cocaine)

### SYNOPSIS:

On 11-09-2004, Nydia "Nanni" BERNABEL and Matthew MARSH sold undercover S/A Steven Story approximately three grams of crack cocaine [Exhibit 38] in exchange for $300 [OAF], during a pre-arranged meeting at the intersection of Foster Street and Leighton Street in Fitchburg, MA.

### DETAILS:

1. Reference is made to the following associated investigative report: DEA 6, Report of Investigation, by S/A Kevin Sawyer, dated 11-12-04, re: surveillance of the Purchase of Exhibit 38 on 11-09-04 in Fitchburg, MA, and the Acquisition of Exhibit N-97, under this same case file; DEA 6, Report of Investigation, by S/A Dan Genese, dated 11-12-04, re: UC Purchase of Exhibit 39 from Nydia BERNABEL on 11-09-04 and the Acquisition of Exhibit N-96 on 11-09-04 and N-100 on 11-10-04, under this same case file.

2. At approximately 5:00 PM, on 11-09-04, S/A Story placed an unrecorded call to cellular telephone to 978-580-6051 to negotiate a crack cocaine transaction with "Nanni [previously identified as Nydia BERNABEL]." [NOTE: Business records obtained by subpoena revealed that NEXTEL cellular telephone 978-580-6051 was subscribed to by Karen IOVANNE, 77 Forest Street, Fitchburg, MA, during this timeframe.] S/A Story spoke to "Nanni [BERNABEL]" who agreed to sell S/A Story eight "40's [eight individual increments of .4 gram quantities of crack cocaine which are

| 11. Distribution: Division | 12. Signature (Agent) *Steven C. Story* S/A Steven C. Story | 13. Date 11-18-04 |
|---|---|---|
| District | 14. Approved (Name and Title) Richard W. Godard Group Supervisor | 15. Date 11-18-04 |
| Other | | |

Form - 6 (1996)

## DEA SENSITIVE
Drug Enforcement Administration

1 - Prosecutor

This report is the property of the Drug Enforcement Administration. Neither it nor its contents may be disseminated outside the agency to which loaned.

Previous edition dated 8/94 may be used.

U.S. Department of Justice
Drug Enforcement Administration

| **REPORT OF INVESTIGATION** | 1. File No. ████████ | 2. G-DEP Identifier |
|---|---|---|
| *(Continuation)* | 3. File Title ████████ | |

| 4. | Page 2 of 4 | |
|---|---|---|
| 5. Program Code MET-100 | 6. Date Prepared 11-10-2004 | |

generally worth $40 each]" for $320. "Nanni" and S/A Story then made arrangements to meet on Leighton Street in Fitchburg in one hour to complete the proposed transaction.

3.  At approximately 5:45 PM, S/A Story, who was acting in an undercover capacity, traveled to the intersection of Kimball and Leighton Streets in Fitchburg, where S/A Story parked the undercover vehicle to await the arrival of BERNABEL.  At approximately 5:50 PM, S/A Story observed a 1996 Jeep Cherokee, bearing Massachusetts registration 6815MX, turn onto Leighton Street and then stop next to the undercover vehicle.  S/A Story approached the open driver's side window of the subject Jeep Cherokee to converse with the two occupants.  S/A Story observed that the driver of the Jeep was a black female [identified by S/A Story as Nydia "Nanni" BERNABEL], and the passenger was a heavy set male [who was subsequently identified as Matthew MARSH].  The ensuing conversation was recorded as Exhibit N-97 via the concealed transmitter worn by S/A Story.

4.  As S/A Story exchanged brief greetings with BERNABEL and MARSH, S/A Story observed BERNABEL answer an incoming call on her cellular telephone [which was believed to be the pre-arranged call of CS████████ or the purpose of introducing BERNABEL to undercover S/A Dan Genese for a subsequent crack purchase to immediately follow S/A Story's pending transaction].  S/A Story asked BERNABEL, "How do they [the crack cocaine rocks] look, are they pretty good?"  BERNABEL replied, "Yes," as MARSH placed a package in "Nanni's" extended right hand.  BERNABEL then displayed the package in her open right hand to S/A Story.  S/A Story told BERNABEL that he only had $300 rather than the previously agreed $320.  BERNABEL commented, "Don't worry about it [regarding the $20 discrepancy]."  S/A Story then handed BERNABEL the $300 serialized OAF, while BERNABEL placed the crack cocaine package in S/A Story's hand.  BERNABEL then cautioned S/A Story by saying, "Watch out [meaning for S/A Story to quickly conceal the crack cocaine on his person]."

5.  S/A Story rapidly inspected the cocaine package and then asked BERNABEL, "Are they pretty good sized 40's?"  BERNABEL did not respond, and S/A Story observed BERNABEL immediately hand the $300 to MARSH.  As Marsh was counting the money, BERNABEL received two more incoming cellular telephone calls, both of which BERNABEL quickly concluded.  S/A Story

DEA Form    - 6a
(Jul. 1996)

**DEA SENSITIVE**
Drug Enforcement Administration

1 - Prosecutor

This report is the property of the Drug Enforcement Administration.
Neither it nor its contents may be disseminated outside the agency to which loaned.

Previous edition dated 8/94 may be used.

U.S. Department of Justice
Drug Enforcement Administration

| REPORT OF INVESTIGATION | 1. File No. | 2. G-DEP Identifier |
|---|---|---|
| *(Continuation)* | 3. File Title | |
| 4.                                  Page  3  of  4 | | |
| 5. Program Code         MET-100 | 6. Date Prepared        11-10-2004 | |

asked BERNABEL, "Are all eight there? [in reference to his original order of eight 40's of crack cocaine]. BERNABEL replied, "No, there's three hundred worth there [which S/A Story understood to mean that the crack cocaine was not packaged as individual .4 gram increments, but was instead packaged as one approximate three gram unit worth $300]." S/A Story told BERNABEL that was "cool," and BERNABEL received another incoming cellular call. The deal was then concluded, and BERNABEL and MARSH sped away from the area.

**CUSTODY OF EVIDENCE:**

**Drug Evidence:**

**Exhibit 38** is described as one (1) clear plastic baggie that was twist-tied at the top and contained an off-white colored rock-like substance. Exhibit 38 was purchased by U/C S/A Steven Story from Nydia "Nanni" BERNABEL and Matthew MARSH for $300 OAF on 11-09-04 in the vicinity of Leighton Street, Fitchburg, MA. S/A Story maintained custody of Exhibit 38 until transferring said evidence to S/A David DiTullio on that same date. S/A DiTullio conducted a cocaine field test on Exhibit 38, which yielded positive presumptive results for the presence of cocaine base. S/A DiTullio relinquished custody of Exhibit 38 to FPD Detective James Gilbert, who secured said evidence at the FPD on that same date. On 11-10-04, FPD Det. Gilbert transferred custody of Exhibit 38 to S/A Edgar Sarabia. S/A Sarabia then transported Exhibit 38 to DEA in Boston, MA, where said evidence was secured in the NEFD drug evidence storage vault. On 11-15-04, S/A Sarabia removed Exhibit 38 for the NEFD vault and subsequently mailed Exhibit 38 to the DEA Northeast Regional Laboratory in New York, NY via RMRRR # RA897688692US for analysis and storage.

**INDEXING:**

1. BERNABEL, Nydia Sharaai (aka Nydias BERNABEL, Nadia BERNABEL, Nydia VENTURA, "Nanni", "Nonni"): ▮▮▮▮▮▮▮ DOB: 12-27-1972; Hispanic female, 5'08" tall, 200 pounds, black hair, brown eyes; SSN: ▮▮▮▮▮ cellular telephone: 978-580-6051; last known residential address: 70 Pleasant Street, Apartment #1, Fitchburg, MA.


Form  - 6a
(Jul. 1996)

**DEA SENSITIVE**
Drug Enforcement Administration

This report is the property of the Drug Enforcement Administration.
Neither it nor its contents may be disseminated outside the agency to which loaned.

Previous edition dated 8/94 may be used.

1 - Prosecutor

**U.S. Department of Justice**
Drug Enforcement Administration

| | | 1. File No. | 2. G-DEP Identifier |
|---|---|---|---|
| **REPORT OF INVESTIGATION** *(Continuation)* | | | |
| | | 3. File Title | |
| 4. | Page   4   of   4 | | |
| 5. Program Code   MET-100 | | 6. Date Prepared   11-10-2004 | |

**INDEXING (Continued):**

2. MARSH, Matthew A.:                    DOB: 07-02-1975; white male, 5'09"
tall, 245 pounds, blonde hair, brown eyes; SSN:                    last known
residential: 118 Myrtle Avenue, Fitchburg, MA.

Form    - 6a
(Jul. 1996)

**DEA SENSITIVE**
Drug Enforcement Administration

**1 - Prosecutor**

This report is the property of the Drug Enforcement Administration.
Neither it nor its contents may be disseminated outside the agency to which loaned.

Previous edition dated 8/94 may be used.

29

**U.S. Department of Justice**
Drug Enforcement Administration

| **REPORT OF INVESTIGATION** | | | | | Page 1 of 2 | |
|---|---|---|---|---|---|---|
| 1. Program Code<br>MET-100 | | 2. Cross File | Related Files | 3. File No. | | 4. G-DEP Identifier |
| 5. By: S/A Kevin C. Sawyer<br><br>At Boston, MA | | ☐<br>☐<br>☐<br>☐ | | 6. File Title | | |
| 7. ☐ Closed ☐ Requested Action Completed<br>☐ Action Requested By: | | ☐ | | 8. Date Prepared<br>11/12/04 | | |
| 9. Other Officers: See paragraph below | | | | | | |
| 10. Report Re: SURVEILLANCE OF THE PURCHASE OF EXHIBIT #38 AND THE ACQUISITION OF EXHIBIT N-97 ON 11-09-2004 | | | | | | |

**DETAILS:**

1. On Tuesday, 11-9-2004, at approximately 5:30 p.m., surveillance was established in the vicinity of the intersection of Kimball and Leighton Streets, Fitchburg, MA. At approximately 5:35 p.m., S/A Sawyer observed S/A Story, acting in an undercover capacity, drive into the parking lot of the PACE Gas station, Kimball and Rollstone streets, Fitchburg, MA. At approximately 5:40 p.m., S/A's Sawyer, Desmond, Karamourtopoulos, and Det. Connolly observed S/A Story drive from the PACE gas station to the corner of Kimball and Leighton St and park. At approximately 5:50 p.m., S/A's Desmond and Karamourtopoulis observed a 1996 Jeep Grand Cherokee, MA registration: 6815MX, listed to Karen Iovane, 77 Forest St. Fitchburg, MA, arrive and S/A Story to be engaged in conversation with the front seat passenger. S/A's Desmond and Sawyer observed this vehicle to be occupied by two individuals. After several minutes, Agents observed the Jeep depart. Surveillance of the Jeep was incomplete as the vehicle sped away at a high rate of speed.

2. Other Officers (Cont.) G/S Richard Guerard, S/A's Steve Story, Tim Desmond, Paul Karamoutopoulis, Dan Genese, Clem Fisher, Dave Ditullio, Detectives Jake O'Leary, Jim Gilbert, Jim Connolly, and Chuck Demming.

| 11. Distribution:<br>Division NEFD Intel<br><br>District<br><br>Other   SARI | 12. Signature (Agent)<br><br>S/A Kevin C. Sawyer | 13. Date<br>11/15/04 |
|---|---|---|
| | 14. Approved (Name and Title)<br>Richard Guerard<br>Group Supervisor | 15. Date<br>11·15·04 |

Form    - 6
(Jul. 1996)

**DEA SENSITIVE**
Drug Enforcement Administration

1 - Prosecutor

This report is the property of the Drug Enforcement Administration.
Neither it nor its contents may be disseminated outside the agency to which loaned.

Previous edition dated 8/94 may be used.

30

**U.S. Department of Justice**
Drug Enforcement Administration

| | | 1. File No. | 2. G-DEP Identifier |
|---|---|---|---|
| **REPORT OF INVESTIGATION** *(Continuation)* | | 3. File Title | |

| 4. Page 2 of 2 | |
|---|---|
| 5. Program Code MET-100 | 6. Date Prepared 11/12/04 |

## NON DRUG EVIDENCE:

N-97.  Exhibit N-97 consists of an original DVD-R disquette containing recorded images and voice of the meeting between S/A Story and VENTURA on 11-9-2004 during the U/C purchase of Exhibit # 38. S/A Desmond recorded N-97, retained custody, and gave to S/A Karamourtopoulis for safekeeping, processing, and subsequent transfer to the NEFD non drug evidence custodian at a later date.

## INDEXING:



DEA Form - 6a
(Jul. 1996)

**DEA SENSITIVE**
Drug Enforcement Administration

This report is the property of the Drug Enforcement Administration.
Neither it nor its contents may be disseminated outside the agency to which loaned.

Previous edition dated 8/94 may be used.

**1 - Prosecutor**

31

3857                                                                                    168665

U.S. Department of Justice
Drug Enforcement Administration

**REPORT OF DRUG PROPERTY COLLECTED, PURCHASED OR SEIZED**

| HOW OBTAINED (Check) | 2a. FILE NO. | 2b. PROGRAM CODE | 3. G-DEP ID |
|---|---|---|---|
| [X] Purchase  [ ] Seizure  [ ] Free Sample | | MET-100 | |
| [ ] Lab. Seizure  [ ] Money Flashed  [ ] Compliance Sample (Non-Criminal) | | | |
| [ ] Internal Body Carry  [ ] Other (Specify) | | | |

| 4. WHERE OBTAINED (City, State/Country) | 4b. DATE OBTAINED | 5. FILE TITLE |
|---|---|---|
| Fitchburg, MA/USA | 11-09-2004 | |

| 1. REFERRING AGENCY (Name) | 6b. REFERRAL | 7. DATE PREPARED | 8. GROUP NO. |
|---|---|---|---|
| | [ ] Case No. OR [ ] Seizure N. No. | 11-15-2004 | MET / 2 |

| Exhibit No. | 10. FDIN (10 characters) | 11. ALLEGED DRUGS | 12. MARKS OR LABELS (Describe fully) | 13. Seized | 14. Submitted | 15. Purchase Cost |
|---|---|---|---|---|---|---|
| 38 | | Cocaine Base | One (1) clear plastic bag containing a rock-like sub-stance (off-white), twist tied at the top. Bag is marked for field testing. | 25.97 ggw | 25.97 ggw | $300.00 |
| | | | | | | |
| | | | | | | |
| | | | | | | |
| | | | | | | |
| | | | | | | |

WAS ORIGINAL CONTAINER SUBMITTED SEPARATE FROM DRUG?    [X] NO (included above)    [ ] YES (if Yes, enter exhibit no. and describe original container fully)

REMARKS:

Ex.#38 was purchased by U/C S/A Steven Story from Nydias BERNABEL on 11-09-2004, in Fitchburg, MA. S/A Story maintained care and custody of said exhibit until handing said ex. to S/A DiTullio who then processed and field tested said exhibit. S/A DiTullio then handed said ex. to FPD Gilbert who secured it at FPD on the same day.  On 11-10-2004, S/A Sarabia transported said exhibit to NEFD where he secured said exhibit in the DEC Vault for safekeeping. S/A Sarabia later removed said exhibit from the DEC Vault for mailing to NERL via RMRRRR for further laboratory analysis and safekeeping.

| 17. SUBMITTED BY SPECIAL AGENT (Signature) | 18. APPROVED BY (Signature & Title) |
|---|---|
| S/A Edgar L. Sarabia | G/S Richard W. Guerard, GS. |

**LABORATORY EVIDENCE RECEIPT REPORT**

| NO. PACKAGES | 20. RECEIVED FROM (Signature & Date) | 21. Print or Type NAME and TITLE |
|---|---|---|
| 1 | RA 897086692 | |

| SEAL | 23. RECEIVED BY (Signature & Date) | 24. Print or Type NAME and TITLE |
|---|---|---|
| Broken  [X] Unbroken  12/16/04 | 11/18/04 | Irene Millo Et |

pm **LABORATORY REPORT**

ANALYSIS SUMMARY AND REMARKS

Exhibit #38 contains cocaine base

Gross Wt. = 26.8 g
Net Wt. =    1.7 g

**SEE CERTIFICATION ON BACK**

| Exhibit No. | 27. Lab. No. | 28. ACTIVE DRUG INGREDIENT (Established or Common Name) | 29. Strength | 30. Measure | 31. Unit | 32. AMT. OF PURE DRUG | 33. RESERVE |
|---|---|---|---|---|---|---|---|
| 38 | 168665 | cocaine base | 60 | % | | 1.0 g | 1.4 g |
| | | | | | | | |
| | | | | | | | |
| | | | | | | | |

| 34. ANALYST (Signature) | | 35. TITLE | 36. DATE COMPLETED |
|---|---|---|---|
| BRIAN J. HALL | | FORENSIC CHEMIST | 12/14/04 |

| 37. APPROVED BY (Signature & Date) | 38. TITLE | 39. LAB. LOCATION |
|---|---|---|
| THOMAS M. BLACKWELL  12/17/04 | LABORATORY DIRECTOR | NEW YORK | 83 |

DEA Form - 7
(pt. 1995)    Previous edition dated 4/90 may be used until stock is exhausted.    1 - Prosecution

# <u>EXHIBIT 2</u>

**U.S. Department of Justice**
Drug Enforcement Administration

| **REPORT OF INVESTIGATION** | | Page 1 of 4 |
|---|---|---|

| 1. Program Code MET-100 | 2. Cross File | Related Files | 3. File No. | 4. G-DEP Identifier |
|---|---|---|---|---|
| 5. By: S/A Dan Genese At: Boston FD-Group 2 | | | 6. File Title | |
| 7. ☐ Closed ☐ Requested Action Completed ☐ Action Requested By: | | | 8. Date Prepared 11/12/04 | |

9. Other Officers: G/S Guerard, S/A's DiTullio, Karamourtopoulos, Desmond, Sawyer, Story, Fisher, TFA's Connolly, O'Leary, Deming, Gilbert, Connolly, Fitzpatrick.

10. Report Re: UC purchase of Exhibit #39 from Nydia BERNABEL & the acquisition of Exhibit N-96 on Nov. 9, 2004 & N-100 on Nov. 10, 2004

**DETAILS**

1.    Reference is made to DEA-6's written to this case file and title relative to the Acquisition of Exhibit's 24 and 38 from Nydia BERNABEL. Reference is also made to a DEA-6 written by TFA Gilbert relative to the surveillance of the UC purchase of Exhibit #39 on Nov. 9, 2004.

     On Nov. 9, 2004 TFA Gilbert met with DEA Confidential Source ▉▉▉▉ ▉▉▉▉▉ (hereafter referred to as the CS), and was advised by the CS that the CS could purchase crack cocaine from Nydia BERNABEL, (known to the Fitchburg Police Dept. as a crack cocaine distributor). Later the same day, the CS contacted TFA Gilbert and advised that the CS spoke with BERNABEL, (at GILBERT's earlier direction), and made arrangements for the introduction of the CS's friend, (an undercover), to BERNABEL for the purpose of the UC purchasing crack cocaine. The CS arranged for a half ounce to be purchased from BERNABEL for $600.00.

3.    On Nov. 9, 2004, in response to the aforementioned information, the above noted personnel met and formulated plans for S/A D. Genese, (acting in an undercover capacity, hereafter referred to as the UC), through an introduction to BERNABEL by the CS, to purchase crack cocaine from BERNABEL in Fitchburg, MA.

| 11. Distribution: Division Boston FD-Intelligence District Other    SARI | 12. Signature (Agent)  S/A Danny F. Genese | 13. Date 11-12-2004 |
|---|---|---|
| | 14. Approved (Name and Title) Richard W. Guerard Group Supervisor, Group 2 | 15. Date 11.12.04 |

DEA Form - 6
(1996)
ex39
1 - Prosecutor

**DEA SENSITIVE**
Drug Enforcement Administration

This report is the property of the Drug Enforcement Administration.
Neither it nor its contents may be disseminated outside the agency to which loaned.

Previous edition dated 8/94 may be used.

**U.S. Department of Justice**
Drug Enforcement Administration

| **REPORT OF INVESTIGATION** | 1. File No. | 2. G-DEP Identifier |
| --- | --- | --- |
| *(Continuation)* | 3. File Title | |

| 4. Page 2 of 4 | | |
| --- | --- | --- |
| 5. Program Code MET-100 | 6. Date Prepared 11/12/04 | |

4.  On the same date, at approximately 6:00pm, the CS, using the UC's
    telephone, placed a recorded call, (N-96), to BERNABEL at telephone
    number 978-580-6051 which was witnessed by the UC and TFA Gilbert. In
    sum, the CS advised BERNABEL that the UC was in town and ready to
    purchase the crack cocaine. BERNABEL told the CS to call her when the
    CS was ready.

5.  Minutes later the UC, equipped with a wireless voice transmitter,
    (monitored by S/A Karamourtopoulos and Desmond), and $600.00 US
    currency, OAF, traveled to Birch St., across from St. Anthony's
    school with the CS. Minutes later, the CS placed a call, (not
    recorded), to BERNABEL using the UC telephone. The CS got through,
    but the call was disconnected for unknown reasons. Several calls were
    placed to BERNABEL with the CS ultimately getting through. The CS
    advised BERNABEL that the CS and UC were on Birch St. by St.
    Anthony's School. Subsequently, the CS exited the UC vehicle and
    waited outside the vehicle for BERNABEL to arrive. Moments later, the
    CS advised the UC that BERNABEL was pulling up. The UC subsequently
    exited the UC vehicle and noted a dark colored Jeep pull along side
    the UCV. The front passenger's side window of the Jeep rolled down at
    which time the UC noted BERNABEL to be occupying the passenger's
    seat. In sum, the CS introduced the UC to BERNABEL at which time
    BERNABEL handed the UC a clear plastic bag containing an off-white
    chunky substance, (subsequently identified as Exhibit #39). The UC
    handed BERNABEL the aforementioned $600.00 US currency in exchange.
    The Jeep then departed the area with the UC and CS re-entering the
    UCV and departing the area to a pre-determined location while
    surveillance was maintained on the Jeep.

6.  The following day, Nov. 10, 2004 TFA Gilbert provided S/A Genese with
    a photo image of BERNABEL and Matthew MARSH, (both arrested on Nov.
    9, 2004 by the FPD subsequent to the sale of Exhibit #39 to the UC.)
    Note: Both were arrested on outstanding default warrants, unrelated
    to the sale to Exhibit #39 to the UC). The UC initialed and dated
    both photo's. The UC positively identified BERNABEL as the subject
    who sold exhibit #39 to the UC and MARSH as the driver of the Jeep
    which transported BERNABEL.



| DEA Form - 6a (Jul. 1996) | **DEA SENSITIVE** Drug Enforcement Administration | |
| --- | --- | --- |

This report is the property of the Drug Enforcement Administration.
Neither it nor its contents may be disseminated outside the agency to which loaned.

Previous edition dated 8/94 may be used.

**1 - Prosecutor**

33

**U.S. Department of Justice**
Drug Enforcement Administration

| | | 1. File No. | 2. G-DEP Identifier |
|---|---|---|---|
| **REPORT OF INVESTIGATION** *(Continuation)* | | 3. File Title | |
| 4. Page 3 of 4 | | | |
| 5. Program Code MET-100 | | 6. Date Prepared 11/12/04 | |

## CUSTODY OF DRUG EVIDENCE

Exhibit #39 is described as one clear plastic bag bearing the initials "DG" and the date "11-9-04", containing an off-white chunky substance. Exhibit #39 was purchased by S/A D. Genese on Nov. 09, 2004 from Nydia BERNABEL in Fitchburg, MA for $600.00, US currency, OAF. On the same date, S/A Genese turned the exhibit over to S/A D. DiTullio who field tested the exhibit with positive results and weighed the same, (approximately 6.3 net grams & 31.5 gross grams). On the same date, S/A DiTullio turned the exhibit over to Det. J. O'Leary of the FPD who secured the exhibit at the FPD overnight. On Nov. 10, 2004 Det. Gilbert turned the exhibit over to S/A E. Sarabia who secured the exhibit at the NEFD drug evidence vault. On a later date, S/A Sarabia mailed the exhibit to the NERL for further testing and analysis.

## CUSTODY OF NON-DRUG EVIDENCE

Exhibit N-96 is described as an original audiocassette recording of a telephone conversation between CS███████ nd Nydia BERNABEL on Nov. 9, 2004 prior to the UC purchase of Exhibit #39 on the same date. On the same date, S/A Genese duplicated the exhibit and turned the original over to S/A P. Karamourtopoulos for further processing. On a later date, S/A Karamourtopoulos submitted the exhibit with the NEFD Non-Drug Evidence Custodian for safekeeping.

N-100 is described as one photo image of Nydia BERNABEL and one photo image of Matthew MARSH provided to S/A Genese by TFA Gilbert on Nov. 10, 2004. The exhibit was turned over to S/A P. Karamourtopoulos on Nov. 10, 2004 who submitted the exhibit at the NEFD Non-Drug Evidence room on a later date.

## INDEXING

BERNABEL, Nydia ████████████



DEA Form - 6a
(Jul. 1996)

**DEA SENSITIVE**
Drug Enforcement Administration

This report is the property of the Drug Enforcement Administration.
Neither it nor its contents may be disseminated outside the agency to which loaned.

Previous edition dated 8/94 may be used.

1 - Prosecutor

**U.S. Department of Justice**
Drug Enforcement Administration

| ~~REPORT OF INVESTIGATION~~ *(Continuation)* | 1. File No. | 2. G-DEP Identifier |
|---|---|---|
| | 3. File Title | |

| 4. Page 4 of 4 | |
|---|---|
| 5. Program Code MET-100 | 6. Date Prepared 11/12/04 |

MARSH, Matthew –

**DEA SENSITIVE**
Drug Enforcement Administration

This report is the property of the Drug Enforcement Administration.
Neither it nor its contents may be disseminated outside the agency to which loaned.

Previous edition dated 8/94 may be used.

**1 - Prosecutor**

35

**U.S. Department of Justice**
Drug Enforcement Administration

## REPORT OF INVESTIGATION

Page 1 of 3

| 1. Program Code MET-100 | 2. Cross File [X] Related Files | 3. File No. | 4. G-DEP Identifier |
|---|---|---|---|

| 5. By: TFA James Gilbert | 6. File Title |
|---|---|
| At: Boston FD-Group 2 | |

| 7. [ ] Closed [ ] Requested Action Completed [ ] Action Requested By: | 8. Date Prepared 11/12/04 |
|---|---|

9. Other Officers: G/S Guerard, S/A's DiTullio, Story, Desmond, Fisher, Sawyer, Karamourtopoulos, TFA's O'Leary, Connolly, Fitzpatrick and Deming.

10. Report Re: Surveillance of the purchase of Ex# 39 by S/A Genese and C_____ from Nydias BERNABEL on 11-09-04. Acquisition of Ex# N-98 and N-102.

## DETAILS

1. Reference is made to a DEA-6 written to this case file and title by S/A Dan Genese relative to the UC purchase of Exhibit# 39 from BERNABEL on Nov. 09, 2004. Further reference is made to all DEA-6's written to this case file relative to the purchases of Exhibit's 24 and 38 from BERNABEL. On Nov. 9, 2004 the above noted personnel formulated plans for the undercover purchase of crack cocaine from Nydias BERNABEL later the same day.

2. Later the same day, in furtherance of the operation, surveillance was established in the area of Birch St., Fitchburg, MA near the St. Anthony's School. At approximately 6:20pm, the UC and DEA-CS____ _____ (hereafter referred to as the CS), arrived at the aforementioned area and waited in the UCV for BERNABEL's arrival as observed by TFA Gilbert. Moments later, the CS exited the UCV and stood outside the vehicle on Birch St., by the driver's side of the UCV as observed by S/A T. Desmond.

3. At approx. 6:31pm, a black Jeep arrived at and parked aside of the UCV, which was parked on side of roadway by St. Anthony's school as witnessed by S/A T. Desmond (The plate on the Jeep: "6815 MX"). Upon the Jeep's arrival, the UC exited the vehicle and approached the

| 11. Distribution: Division Boston FD-Intelligence | 12. Signature (Agent) TFA James Gilbert | 13. Date 11-15-04 |
|---|---|---|
| District | 14. Approved (Name and Title) Richard W. Guerard Group Supervisor, Group 2 | 15. Date 11-11-04 |
| Other    SARI | | |

Form  - 6
(96)
      jgsurv.doc
- Prosecutor

**DEA SENSITIVE**
Drug Enforcement Administration

This report is the property of the Drug Enforcement Administration.
Neither it nor its contents may be disseminated outside the agency to which loaned.

Previous edition dated 8/94 may be used.

36

**U.S. Department of Justice**
Drug Enforcement Administration

| ~~**REPORT OF INVESTIGATION**~~ | 1. File No. | 2. G-DEP Identifier |
|---|---|---|
| *(Continuation)* | 3. File Title | |

| 4.<br>Page  2  of  3 | |
|---|---|
| 5. Program Code<br>MET-100 | 6. Date Prepared<br>11/12/04 |

passenger's side of the Jeep with the CS as witnessed by S/A T. Desmond.

Moments later, the Jeep left the area westerly on Birch St as witnessed by S/A T. Desmond. The UC and CS also departed the area as S/A's P. Karamourtopoulos and T.Desmond followed to the UC and CS to a pre-determined location. ***(It should be noted that UC and CS were under constant surveillance throughout this operation.)***

4. Later the same day, TFA Gilbert learned that at approx. 7:04pm, Fitchburg Ma Police Officer Kenneth Gaetz Jr. while on routine patrol in a marked cruiser observed a black Jeep Grand Cherokee bearing MA reg# 6815MX being operated in an unsafe manner within Fitchburg MA. This was the same Jeep that was involved in the UC purchase of Ex#39 approx 30 minutes prior. PO Gaetz then conducted a civil m/v infraction stop of this vehicle. As a result of this stop, the two occupants were placed under arrest for outstanding default warrants issued out of Mass. State courts. Arrested as a result were BERNABEL who was still the front seat passenger and the operator Matthew MARSH.

5. Once at the Fitchburg Police Department, TFA J. Gilbert at approx. 8:30pm, then viewed the property of both Marsh and BERNABEL which was being held as part of their respective booking procedures. Among BERNABEL"S property were numerous US currency bills. TFA Gilbert then conducted a cross reference of these currency bills serial numbers with the serial numbers of the OAF money and recorded on DEA form # 6a which was used by UC Genese in the purchase of Ex #39 earlier this date. As a result of this cross referencing, eighteen (18) bills, (totaling $400, US currency), in BERNABEL'S property matched with the serial numbers of OAF money used to purchase Ex# 39. The matching bills were checked accordingly by TFA for evidence purposes. (A photocopy of the aforementioned DEA-6a Re; Ex #39 and a photocopy of the corresponding bills were submitted as Non-Drug Evidence, Exhibit N-102.)

<u>**CUSTODY  OF NON-DRUG EVIDENCE**</u>



Form    - 6a
(Jul. 1996)

**DEA SENSITIVE**
Drug Enforcement Administration

**1 - Prosecutor**

This report is the property of the Drug Enforcement Administration.
Neither it nor its contents may be disseminated outside the agency to which loaned.

37

Previous edition dated 8/94 may be used.

**U.S. Department of Justice**
Drug Enforcement Administration

| | |
|---|---|
| **REPORT OF INVESTIGATION** *(Continuation)* | **1. File No.** ███████  **2. G-DEP Identifier** ███████ |
| | **3. File Title** ███████ |
| **4. Page  3  of  3** | |
| **5. Program Code** MET-100 | **6. Date Prepared** 11/12/04 |

Exhibit N-98 is described as one DVD (audio and video) recording of the UC purchase of Exhibit #39 from Nydias BERNABEL on Nov. 9, 2004 in Fitchburg, MA. The exhibit was produced by S/A T. Desmond on the same date and turned over to S/A Karamourtopoulos. On a later date, S/A Karamourtopoulos turned the Exhibit over to the NEFD Non-Drug Evidence Custodian for safekeeping.

Exhibit N-102 is described as a photocopy of US currency that matched serialized bills from the DEA-6a corresponding to the purchase of Exhibit #39 & a photocopy of the aforementioned DEA-6a. The exhibit was produced by TFA Gilbert on Nov. 9, 2004. The Exhibit was initialed and dated by TFA Gilbert on Nov. 10, 2004 prior to TFA Gilbert turning the exhibit over to S/A D. Genese for processing. On the same date, S/A Genese turned the exhibit over to S/A P. Karamourtopoulos who submitted the same to the NEFD Non-Drug Evidence Custodian for safekeeping.

**INDEXING**

1. BERNABEL, Nydias (aka: Nanni) - ███████ Black Female, DOB: 12/27/1972, SS# ███████ Hair: Black, Eyes: Black, 508, 180 lbs.  77 Forest St in Fitchburg Ma. (978) 343-8337. On 11-09-04 sold TFA one-half ounce of crack-cocaine, Fitchburg MA.

2. MARSH, Matthew - ███████ D.O.B: 07-02-1975, Address: 118 Myrtle Ave. Fitchburg, MA. SS# ███████ White male, 245 lbs, 5'09".


**DEA Form - 6a**
(Jul. 1996)

**DEA SENSITIVE**
Drug Enforcement Administration

This report is the property of the Drug Enforcement Administration.
Neither it nor its contents may be disseminated outside the agency to which loaned.

Previous edition dated 8/94 may be used.

**1 - Prosecutor**

**U.S. Department of Justice**
Drug Enforcement Administration

## REPORT OF INVESTIGATION

Page 1 of 1

| 1. Program Code MET-100 | 2. Cross File | Related Files | 3. File No. | 4. G-DEP Identifier |
|---|---|---|---|---|

| 5. By: S/A David DiTullio | | | 6. File Title |
| At Boston FD-Group 2 | ☒ | | |
| | ☐ | | |

| 7. ☐ Closed  ☐ Requested Action Completed | 8. Date Prepared |
| ☐ Action Requested By: | 12/13/04 |

9. Other Officers:

10. Report Re: Correction 6 RE: DEA-6 by TFA Gilbert on 11-12-04.

### DETAILS

1. Reference is made to the DEA-6 by TFA Gilbert dated 11-12-04 entitled Surveillance of the purchase of Ex# 39 on 11-09-04. Paragraph #2 states at approximately 6:20pm, the UC and DEA-CS ████████ (hereafter referred to as the CS), arrived at the aforementioned area and waited in the UCV for BERNABEL's arrival as observed by TFA Gilbert.

2. Let the record reflect that the CS # is incorrect. The correct CS # is CS-████████

| 11. Distribution: | 12. Signature (Agent) | 13. Date |
| Division Boston FD-Intelligence | S/A David M. DiTullio | 12/13/04 |
| District | 14. Approved (Name and Title) Richard W. Gerard Group Supervisor Group 2 | 15. Date 12/13/04 |
| Other SARI | | |

DEA Form - 6
(1996)

**DEA SENSITIVE**
Drug Enforcement Administration

1 - Prosecutor

This report is the property of the Drug Enforcement Administration.
Neither it nor its contents may be disseminated outside the agency to which loaned.

Previous edition dated 8/94 may be used.

36354

168666

U.S. Department of Justice
Drug Enforcement Administration

**REPORT OF DRUG PROPERTY COLLECTED, PURCHASED OR SEIZED**

Read Instructions on Reverse before Completing.

| HOW OBTAINED (Check) | | |
|---|---|---|
| [X] Purchase | [ ] Seizure | [ ] Free Sample |
| [ ] Lab. Seizure | [ ] Money Flashed | [ ] Compliance Sample (Non-Criminal) |
| [ ] Internal Body Carry | [ ] Other (Specify) | |

| 2a. FILE NO. | 2b. PROGRAM CODE | 3. G-DEP ID |
|---|---|---|
| | MET-100 | |

| 4. WHERE OBTAINED (City, State/Country) | 4b. DATE OBTAINED |
|---|---|
| Fitchburg, MA/USA | 11-09-2004 |

5. FILE TITLE

| 6. REFERRING AGENCY (Name) | 6b. REFERRAL |
|---|---|
| | [ ] Case No. OR [ ] Seizure No. No. |

| 7. DATE PREPARED | 8. GROUP NO. |
|---|---|
| 11-15-2004 | MET / 2 |

| Exhibit No. | 10. FDIN (10 characters) | 11. ALLEGED DRUGS | 12. MARKS OR LABELS (Describe fully) | APPROX. GROSS QUANTITY | | 15. Purchase Cost |
|---|---|---|---|---|---|---|
| | | | | 13. Seized | 14. Submitted | |
| 9 | | Cocaine Base | One (1) clear plastic bag | 31.52 ggw | 31.52 ggw | $600.00 |
| | | | bearing the initials "DG" | | | |
| | | | and the date "11-9-04", | | | |
| | | | containing an off-white, | | | |
| | | | chunky substance. | | | |

WAS ORIGINAL CONTAINER SUBMITTED SEPARATE FROM DRUG ?  [X] NO (included above)  [ ] YES (if Yes, enter exhibit no. and describe original container fully)

REMARKS:

Ex.#39 was purchased by U/C S/A Dan Genese from Nydias BERNABEL on 11-09-2004, in Fitchburg,
MA. S/A Genese maintained care and custody of said exhibit until handing said ex. to S/A
DiTullio who then processed and field tested said exhibit. S/A DiTullio then handed said ex.
to FPD Gilbert who secured it at FPD on the same day. On 11-10-2004 S/A Sarabia transported
said exhibit to NEFD where he secured said exhibit in the DEC Vault for safekeeping. S/A
Sarabia later removed said exhibit from the DEC Vault for mailing to NERL via RMRRRR for
further laboratory analysis and safekeeping.

| 16. SUBMITTED BY SPECIAL AGENT (Signature) | 18. APPROVED BY (Signature & Title) |
|---|---|
| S/A Edgar L. Sarabia | G/S Richard W. Goddard, Jr. |

**LABORATORY EVIDENCE RECEIPT REPORT**

| NO. PACKAGES | 20. RECEIVED FROM (Signature & Date) | 21. Print or Type NAME and TITLE |
|---|---|---|
| | | |
| SEAL [ ] Broken [X] Unbroken | 23. RECEIVED BY (Signature & Date) 11/18/04 | 24. Print or Type NAME and TITLE |
| 12/16/04 pm | | |

**LABORATORY REPORT**

ANALYSIS SUMMARY AND REMARKS

Exhibit #39 contains cocaine base

Gross Wt. = 30.4 g
Net Wt. =  4.7 g

**SEE CERTIFICATION ON BACK**

| Exhibit No. | 27. Lab. No. | 28. ACTIVE DRUG INGREDIENT (Established or Common Name) | CONCENTRATION | | | 32. AMT. OF PURE DRUG | 33. RESERVE |
|---|---|---|---|---|---|---|---|
| | | | 29. Strength | 30. Measure | 31. Unit | | |
| 39 | 168666 | cocaine base | 57 | % | | 2.6 g | 4.3 g |

| 34. ANALYST (Signature) | 35. TITLE | 36. DATE COMPLETED |
|---|---|---|
| BRIAN J. HALL | FORENSIC CHEMIST | 12/14/04 |
| 37. APPROVED BY (Signature & Date) | 38. TITLE | 39. LAB. LOCATION |
| THOMAS M. BLACKWELL   12/?/04 | LABORATORY DIRECTOR | NEW YORK   84 |

Previous edition dated 4/90 may be used until stock is exhausted.   1 - Prosecution