# UNITED STATES DISTRICT COURT
## DISTRICT OF MASSACHUSETTS

_____
                                          )
**UNITED STATES of AMERICA**              )
                                          )
      **v.**  )      **Criminal No.**
                                          )      **05-40025-FDS**
**MATTHEW MARSH,**                        )
                                          )
      **Defendant.**     )
_____)


## MEMORANDUM ON SENTENCING

**SAYLOR, J.**

      This is a criminal prosecution for trafficking in crack cocaine.  The principal issues at sentencing arise out of the fact that defendant Matthew Marsh successfully moved after his plea of guilty to vacate two state convictions that would have otherwise qualified him as a career offender.

      Defendant pleaded guilty in this case in October 2006.  He then moved in state court to vacate two prior convictions for resisting arrest.  Those convictions would have qualified as "crimes of violence" under the career offender guidelines, U.S.S.G. § 4B1.1, and would have dramatically raised his guideline sentencing range, from 120 months to 262 to 327 months.

      The claimed basis for the motions to vacate the convictions was that defendant was not mentally competent at the time of the pleas of guilty in 2000 and 2004.  Defendant contends (and the government does not dispute) that he suffers from bipolar disorder and post-traumatic stress disorder, and that his condition was not being treated at the time with medication.  Defendant also forthrightly, if inaccurately, advised the state court that if his motions to vacate were not granted, he would be facing "30 to life" in federal court.  The state court granted the motions nine days

before the scheduled sentencing.

Defendant does *not* contend in this Court that he is incompetent, or that he was incompetent at the time of his plea in October 2006—even though he continues to suffer from the same mental condition, and even though he was not receiving treatment at the time of the plea.

The basic questions presented are (1) whether—notwithstanding the fact that neither defendant nor the government contends that he is incompetent—this Court should order a hearing, or direct that the defendant be examined py a psychiatrist or psychologist, to determine his mental competency under 18 U.S.C. § 4241, and (2) whether the Court must ignore evidence of the criminal conduct underlying the vacated conviction.  For the reasons set forth below, the Court answers both questions in the negative.

## I.    Background

Defendant Matthew Marsh pleaded guilty on October 23, 2006, to a three-count indictment charging him with conspiracy to distribute cocaine base in violation of 21 U.S.C. § 846 (Count 1) and distribution of cocaine base in violation of 21 U.S.C. § 841(a)(1) (Counts 2 and 3). The cocaine base was in the form of crack cocaine, and the amount attributable to Marsh is 64 grams, or about two and one-quarter ounces.

Based on the drug weight alone, defendant is subject to a mandatory minimum penalty of five years' imprisonment.  *See* 21 U.S.C. § 841(b)(1)(B)(iii).  He also has a prior conviction for a felony drug offense; he pleaded guilty in this Court in 1996 to conspiracy to import cocaine base, importation of cocaine base, and possession with intent to distribute cocaine base.[1]  That

---

[1] The government filed an information pursuant to 21 U.S.C. § 851 describing that conviction and indicating its intent to rely upon it to increase defendant's punishment.

conviction, standing alone, increases defendant's mandatory minimum penalty to ten years' imprisonment. See 21 U.S.C. § 841(b)(1)(B)(iii).[2] Defendant does not dispute the validity of that conviction.

Defendant also had—at least as of October 23, 2006, the date he pleaded guilty—two relevant prior state convictions.[3] The two convictions are as follows:

    (1)    a conviction in the Leominster District Court on January 13, 2000, for resisting arrest and disorderly conduct; and

    (2)    a conviction in the Fitchburg District Court on May 6, 2004, for resisting arrest and disorderly conduct.

Defendant was represented by counsel in both instances. Both convictions resulted in very light penalties; he was sentenced to pay a fine of $100 on the 2000 conviction and to less than eight months' probation on the 2004 conviction.[4]

Had they not been vacated, the 2000 and 2004 convictions for resisting arrest would have had a dramatic impact on defendant's guideline sentence. Under the career offender guidelines, U.S.S.G. § 4B1.1, convictions for resisting arrest are considered convictions for "crimes of

---

[2] Defendant contends that he was only a "minor participant" in the criminal activity within the meaning of § 3B1.1(b) of the sentencing guidelines, and therefore entitled to a two-level downward adjustment in the offense level. According to the Presentence Report, he drove his co-conspirator to deliver the drugs (she had lost her driver's license), handed her the drugs during the transactions, and counted the money received; he was paid in crack cocaine. The Court does not need to decide the issue, however, as the application of the mandatory minimum sentence makes the issue moot.

[3] Defendant's criminal history also includes, among other things, a conviction in the Fitchburg District Court on July 17, 2003, for malicious destruction of property and triggering a false alarm. He did not seek to vacate that conviction on grounds of lack of competency, notwithstanding the fact that it occurred between 2000 and 2004.

[4] Defendant subsequently violated his probation—the nature of the violation is not set forth in the record—and the probation apparently was terminated at that point without further penalty.

violence." *See, e.g., United States v. Wardrick*, 350 F.3d 446, 455 (4th Cir. 2003). Because defendant (1) is 31 years old, (2) is being sentenced for a controlled substance offense, and (3) would have had three prior felony convictions for crimes of violence (the two prior state convictions) and a controlled substance offense (the prior federal conviction), the defendant would have been deemed a "career offender." Under the sentencing guidelines, his sentencing range would be thereby increased from 120 months (the mandatory minimum) to 262-327 months, or from 10 years to approximately 21-27 years.

However, on March 9, 2007, two weeks before the scheduled sentencing in this Court, defendant moved in the Fitchburg and Leominster District Courts to have the two state convictions vacated. As grounds for those motions, defendant contended that, due to his mental condition, he "did not possess a sufficient present ability to consult with his lawyer with a reasonable degree of rational understanding or a factual understanding of the proceedings against him . . . ."

In support of those motions, defendant submitted a report of Ronald Ebert, Ph.D., a forensic psychologist, dated March 5, 2007, as well as affidavits from Dr. Ebert and defendant. Dr. Ebert had not examined or treated defendant prior to February 2007. He concluded, based on two interviews with the defendant in February and a review of his medical records and other materials, that the defendant was currently suffering from bipolar disorder, post-traumatic stress disorder, and alcohol and cocaine dependence. In his affidavit, he concluded that "to a reasonable degree of psychological certainty that on both 10/22/99 [the date of the incident leading to the January 2000 plea] and 4/30/04 [the date of the incident leading to the May 2004 plea], Mr. Marsh was suffering from symptoms of his major mental illness such as agitation, disorganization,

4

confusion and self-destructive behaviors." He also attested:

> It is further my opinion to a reasonable degree of psychological certainty that Mr. Marsh's untreated mental illness continued through the periods that he entered pleas. In his untreated state he would not have had the ability to make a waiver that was knowing and intelligent or a product of a clear and rational thought.[5]

In both motions, defendant specifically advised the District Court that "[t]ime is of the essence on this motion [to vacate] as it appears that because of the two prior convictions for resisting arrest, the defendant has been classified as a career offender in federal court and . . . is facing 30 to life in Worcester Federal District Court." It is unclear what, if any, position was taken in response by the Worcester County District Attorney's Office. On March 14, 2007—nine days before the scheduled sentencing in this Court—the motions to withdraw the pleas were granted by the state court and the matters were set for retrial.[6]

Defendant submitted the same report written by Dr. Ebert to this Court. He does not, however, claim that he is now mentally incompetent, or that he was incompetent at the time of his change of plea in October 2006.

## II.    **Analysis**

There are two principal issues raised by the vacating of the convictions: (1) whether the Court should order a hearing, or order that the defendant undergo a psychiatric or psychological examination, to determine whether he is mentally competent pursuant to 18 U.S.C. § 4241; and

---

[5] Dr. Ebert also noted:

> In addition, Mr. Marsh has reported to me that he does not cooperate with medication and appears not to have been taking medication at those times. He may have been abusing substances, which only worsens his psychiatric condition.

[6] The judge who granted the motions was the same judge who presided over the changes of plea.

(2) whether this Court may consider the conduct underlying the two vacated convictions in imposing sentence in this case.

### A.    <u>Whether the Defendant Is Mentally Competent</u>

The first issue that the Court must address is whether it should conduct a hearing or order that the defendant be examined to determine if he is mentally competent.  As noted, defendant argued in the state court that he was not competent in 2000 and 2004 due to his mental condition, principally bipolar disorder, for which he had received no treatment.  That argument was based on the submissions by Dr. Ebert, who interviewed defendant in February 2007 and rendered his opinion—in hindsight—in March 2007.

Defendant has taken a different position in this Court.  During the plea colloquy on October 23, 2006, the Court and the defendant had the following exchange:

> THE COURT:   Have you been treated recently for any mental illness or psychiatric or psychological problem of any kind?
>
> THE DEFENDANT:   Yes, I have.
>
> THE COURT:   What is that?
>
> THE DEFENDANT:   Rapid cycle bipolar disorder. . . . It's a form of bipolar. It's just it's a rapid cycle, rather than a normal cycle, I guess. . . .
>
> THE COURT:   And are you on any medication for that?
>
> THE DEFENDANT:   No, sir.
>
> THE COURT:   Are you receiving any treatment for that at all?
>
> THE DEFENDANT:   Yes, I am.
>
> THE COURT:   What treatment are you receiving? . . .
>
> THE DEFENDANT:   I have monthly psychology appointments at the institution

6

that I'm at.  I'm supposed to be on medication, but I'm actually not on medication, because of the adverse effects I have on that.  So I decline the medication.

THE COURT:   So you've tried the medication, and you didn't like it, because of the adverse effects?

THE DEFENDANT:   Yes, sir.

THE COURT:   So you're presently unmedicated?

THE DEFENDANT:   Yes.

THE COURT:   All right.  And does your disorder interfere in any way with your ability to understand what's going on here today?

THE DEFENDANT:   No, sir.

THE COURT:   Is there any doubt in your mind at all that you understand what we're about to do here?

THE DEFENDANT:   No, sir.

THE COURT:   All right.  Mr. Black, is there any reason you're aware of why we should not continue?

MR. BLACK:   Not at all.  I have been aware of his mental illness for quite some time, and I have never had any trouble being understood by him, understanding him, communicating with him in any way, including up until today.

Defendant thus freely acknowledged in October 2006—under oath and with the assistance of counsel—that he was mentally competent, notwithstanding the fact that he was not taking any medication for his bipolar disorder or any other mental health condition.  The Court, having no reason to conclude otherwise, found that defendant was fully competent.  And defendant does not now claim that he was incompetent in October 2006, or that he is incompetent now.[7]

This Court has been placed in a somewhat difficult and uncomfortable position.  The

---

[7] Although defendant suggests that an adjustment for diminished capacity would be appropriate under § 5k2.13, it would not affect the guidelines sentence, as the mandatory minimum would apply in any event.

positions taken by defendant as to his mental health are, at a minimum, substantially inconsistent.[8]

He has not sought to be declared incompetent in this Court (where it would operate to his

disadvantage, as it might lead to civil commitment under 18 U.S.C. § 4241), but did so in the

state court (where it operated to his advantage, to avoid significant consequences under the career

offender guidelines).

      The Court has no authority or jurisdiction to reinstate the two state convictions, or to

revisit the factual predicates underlying the decisions to vacate those convictions.  To the

contrary, it is required to accept the vacating of the state convictions, even if it believes that the

state court's decision may have been incorrect.  *See, e.g., United States v. Guthrie*, 931 F.2d 564,

572 (9th Cir. 1991); *United States v. Cox*, 245 F.3d 126, 130 (2d Cir. 2001).

      The issue before this Court is thus simply whether it should conduct a hearing, or have

defendant examined by a psychiatrist or psychologist, pursuant to 18 U.S.C. § 4241.  Based on

the undisputed evidence, the Court concludes that there is no reasonable cause to believe that the

defendant is presently suffering from a mental disease or defect rendering him mentally

incompetent to the extent that he is unable to understand the nature and consequences of the

proceedings against him or to assist properly in his defense, or that he was so afflicted in October

---

[8] According to defendant,

> The psychological circumstances of the defendant were quite different at the time of the
> earlier pleas.  He was on the street abusing alcohol and other drugs.  This contributed to the
> behavior underlying the resisting arrest charges.  In the case at hand, the defendant was
> incarcerated and away from the circumstances that contributed to the bi-polar disease flaring
> up.

(Deft. Supp. Sent. Mem. at 2-3).  The Court does not doubt that defendant's abuse of alcohol and drugs contributed
to his criminal conduct, and did not have a positive impact on his mental state.  Nonetheless, it is entirely unclear
how defendant could be incompetent in 2004 but competent in 2006, with the same mental condition (bipolar
disorder and PTSD) and the same course of treatment (effectively, none), whether or not he was also abusing
alcohol and drugs.

2006.  Accordingly, there is no reason to order a hearing or a psychiatric or psychological examination to determine his competency.  The Court makes no conclusion as to his competency at any other period of time.

**B.    Whether Information from the Police Reports May Be Considered and Used to Increase the Sentence**

The second issue is whether the Court may consider, for purposes of sentencing, the information contained in the Presentence Report concerning the now-vacated convictions, and if so whether it may increase the sentence in reliance on that information.  Although the convictions themselves have been vacated, the Presentence Report contains a description of the conduct underlying those convictions, taken from the criminal complaints and the police reports.

**1.    Information in the Presentence Report Concerning Underlying Conduct**

The first conviction was based on an incident that took place in October 1999.  According to the PSR, Leominster police officers responded to a call from a Denny's restaurant that defendant was creating a disturbance.  When the police arrived, defendant had apparently knocked his food and tableware on the floor, "was making loud and incoherent noises," and "appeared to be severely incapacitated due to extreme inebriation."  He was arrested for disturbing the peace. While he was being placed in the cruiser, he repeatedly kicked one of the arresting officers and had to be subdued with pepper spray.

The second conviction was based on an incident that took place in April 2004.  According to the PSR, defendant was arrested by the Fitchburg police at a bar after he disrupted an arrest and would not obey commands to leave the area.  He then resisted his own arrest and was "extremely uncooperative, volatile, belligerent, and refused booking."

9

2.     **Consideration of the Information for Sentencing Purposes**

Defendant contends that the Court not only must disregard the vacated convictions, but also the conduct underlying those convictions. The First Circuit has previously held exactly the opposite—that a sentencing court may in fact take into account reliable evidence that the defendant committed the criminal conduct underlying any vacated convictions. *See United States v. Hardy*, 99 F.3d 1242, 1250-51 (1st Cir. 1996); *accord, e.g., United States v. Cash*, 983 F.2d 558, 562-63 (4th Cir. 1992).

Defendant, however, contends that the subsequent decision of the United States Supreme Court in *Shepard v. United States*, 544 U.S. 13 (2005), precludes consideration of information contained in a police report for sentencing purposes. In *Shepard*, the Supreme Court held that any inquiry under the Armed Career Criminal Act, 18 U.S.C. § 924(e), to determine whether a predicate conviction was a violent felony must be limited to judicial records (such as the terms of a plea agreement or the transcript of a plea colloquy in which the defendant confirmed the factual basis for the plea). 544 U.S. at 26. Such an inquiry may not be based upon non-judicial records, including information in police reports. *Id.*

*Shepard*, however, does not mandate a different result here. It was not a guidelines case, and did not rest on Sixth Amendment or other constitutional grounds; rather, it expressly involved "an issue of statutory interpretation." 544 U.S. at 23. The opinion contained no language suggesting that its holding or reasoning should be extended to sentencing proceedings under the guidelines.

Furthermore, disregarding reliable information from police reports would run directly

10

contrary to both 18 U.S.C. § 3661 and its guideline counterpart, § 1B1.4.  Section 3661 provides:

> No limitation shall be placed on the information concerning the background, character, *and conduct* of a person convicted of an offense which a court of the United States may receive and consider for the purposes of imposing an appropriate sentence.

(emphasis added).[9]  It would be anomalous, indeed, if during the sentencing process the Court could consider self-serving and often unverifiable information from a defendant (for example, statements concerning childhood abuse or trauma), but not an official record from a law enforcement agency concerning conduct that led directly to a criminal charge (and conviction, albeit later vacated).

Furthermore, the guidelines themselves contemplate that a sentencing court may want to consider the criminal conduct underlying a reversed, vacated, or invalidated conviction.  Under Application Note 6 to § 4A1.2, where a conviction has been vacated because of an error of law or subsequently discovered evidence, or because it is constitutionally invalid, the sentencing court may nonetheless consider "the criminal conduct underlying any [such] conviction" for purposes of determining whether the defendant's criminal history category substantially under-represents the seriousness of his criminal history or the likelihood he will commit other crimes.

Information in police reports may only be considered, however, if it is reliable.  *See Hardy*, 99 F.3d at 1251; *United States v. Delmarle*, 99 F.3d 80, 86 (2d Cir. 1996) (court properly relied on investigative report of U.S. military police).  The Court concludes that the information in the

---

[9] Section 1B1.4 of the sentencing guidelines likewise provides:

> In determining the sentence to impose within the guideline range, or whether a departure from the guidelines is warranted, the court may consider, without limitation, any information concerning the background, character and conduct of the defendant, unless otherwise prohibited by law.  *See* 18 U.S.C. § 3661.

11

police reports in this case is sufficiently reliable that it may be considered in the sentencing

process.  Defendant has disputed only the validity of the convictions; he has submitted no

information concerning the underlying facts, much less contradicting them.  There is nothing in

the reports, at least as set forth in the PSR, that would cause the Court to question their accuracy

or reliability.  Accordingly, the Court will take into account the information set forth in those

reports in making the sentencing decision.

### 3.    Availability of an Upward Departure

The question then becomes whether the Court may depart upward based on the

information in the police reports concerning the conduct underlying the vacated convictions.  As

noted, when a conviction is vacated, the sentencing court retains the power under the sentencing

guidelines to consider the underlying conduct for purposes of determining the adequacy of the

criminal history category.  *See* U.S.S.G. § 4A1.2, Application Note 6.  Ordinarily, if the

sentencing court determines that the criminal history category is not appropriate, it may depart

upward and use the "criminal history category applicable to defendants whose criminal history or

likelihood to recidivate most resembles the defendant's." U.S.S.G. § 4A1.3 (a)(4)(A).  Thus,

under the guidelines, where the criminal history category does not adequately reflect the

seriousness of the defendant's past criminal conduct, the normal course is to proceed

"horizontally across the sentencing table through successively higher CHCs until it reaches an

appropriate, or 'reflective,' sentencing range." *Hardy*, 99 F.3d at 1248; *see also Guthrie*, 931

F.2d at 573.

Here, defendant's total offense level is 23; even if the Court departed upward all the way

to the highest criminal history category (VI), the guideline range would be 92-115 months, or

below the 120-month mandatory minimum.  The "horizontal" adjustment under § 4A1.3(a)(4)(A) would thus have no effect on the sentence.

There are two other possible options for a departure under the guidelines.  First, the guidelines also permit the sentencing court under some circumstances to move "vertically" down the Criminal History Category VI column until it finds an appropriate guidelines range.  U.S.S.G. § 4A1.3(a)(4)(B); *Hardy*, 99 F.3d at 1248 n.8; *see Cash*, 983 F.2d at 561 n.6.  Such departures are intended for "extreme" cases involving "egregious past criminal conduct."  *Hardy*, 99 F.3d at 1248.  Alternatively, the Court may depart under § 5K2.0(a)(1)(A), if there exists an aggravating circumstance of a kind, or to a degree, not adequately taken into consideration by the sentencing guidelines.

Ordinarily, departure issues involving past criminal conduct are handled within the framework of § 4A1.3, whereas departure issues involving the offense of conviction are handled under § 5K2.0.  *See Hardy*, 99 F.3d at 1248 (departures under § 5K2.0 focus primarily on "'unusual' attributes of the offense of conviction, rather than any underrepresentation of past criminal conduct in the defendant's CHC") (emphasis deleted).  Nonetheless, the Court believes that this case is more appropriately considered under § 5K2.0.  Among other things, the career offender guidelines and the criminal history categories do not neatly intersect, and a case may thus be exceptional within the meaning of § 5K2.0 even though it is not an "extreme" case involving "egregious" conduct within the meaning of § 4A1.3(a)(4)(B).

This is such a case.  Specifically, the Court concludes that an upward departure is warranted under § 5K2.0 because the guidelines do not contemplate the peculiar constellation of events presented by this case.  Although the guidelines contemplate that convictions might be

13

vacated, they do so only in the context of considering whether a criminal history category adjustment is appropriate. The Sentencing Commission does not appear to have considered a situation such as the present one, where convictions have been vacated that might otherwise affect the sentencing range under the career offender guidelines (but not the range based on the ordinary offense level and the criminal history category), and where there is reliable evidence concerning the conduct underlying the convictions. The Court therefore concludes that there exists here an aggravating circumstance of a kind, or to a degree, not adequately taken into consideration by the Sentencing Commission in formulating the guidelines within the meaning of § 5K2.0(a)(1)(A).

### C.    **Imposition of Sentence**

There remains the issue of what sentence to impose. As noted, the career offender guidelines in this case would have produced a sentence of at least 262 months had the convictions not been vacated. The guideline sentence, by contrast, is the mandatory minimum term of 120 months.

The Court considered imposing a sentence that at least approached a level of punishment commensurate with the career offender guidelines, in order to avoid rewarding defendant's inconsistent and arguably manipulative positions concerning his mental health, and to treat him in substance as a career offender. The Court has concluded, however, that an upward departure is appropriate, but that the sentence should be substantially closer to the 120-month guideline sentence than to the 262-month minimum career offender sentence.

As an initial matter, the 120-month guideline sentence does not adequately take into account the conduct underlying the vacated convictions. Defendant's conduct underlying the vacated convictions was violent and anti-social, and in one instance involved an assault on a law

enforcement officer.  If the Court were to impose a 120-month guideline sentence, defendant would receive the exact same sentence that he would have received had he not engaged in that behavior.

Having said that, there are circumstances of a mitigating nature that suggest that a sentence of substantially less than 262 months is appropriate.  First, and foremost, the government does not seek a sentence above 120 months.[10]  While the Court is not bound by the government's recommendation, ordinarily the Court should undertake to impose a sentence greater than that sought by the government only with great caution and under unusual circumstances.  Second, the defendant does, in fact, have a serious mental health condition that seriously affected his behavior during the relevant years.  While he is not mentally incompetent, and his condition is not an excuse for his behavior, some degree of mitigation is appropriate under the circumstances.  Finally, the two vacated convictions resulted in exceedingly light punishments (a $100 fine and seven-plus months' probation, respectively).  Defendant's conduct was not considered particularly severe by the sentencing courts in the state system even before the convictions were vacated.

Accordingly, while the Court believes that an upward departure is appropriate, it should result in a sentence much closer to the guideline sentence than to the career offender sentence.  Thus, the Court will impose a sentence of 132 months' imprisonment, to be followed by an eight-year term of supervised release.  Taken together, the defendant will be subject to federal supervision for the better part of two decades; the sentence is long, but not greater than necessary

---

[10] Under the plea agreement, defendant also agreed that 120 months was the appropriate sentence.

to achieve the purposes of sentencing.[11]

* * *

Vacating state court convictions for strategic purposes, particularly to avoid federal sentencing consequences, has lately become commonplace, if not routine. *See* JULIE AUSTIN, NOTE, CLOSING A RESENTENCING LOOPHOLE: A PROPOSAL TO AMEND 28 U.S.C. § 2255, 79 S. Cal. L. Rev. 909 (2006) (discussing problem in context of habeas corpus proceedings, and noting that Massachusetts convictions are "particularly vulnerable" to challenge). Under the hydraulic pressures of lengthy prospective sentences in the federal system, the impulse by defendants to vacate prior convictions is entirely understandable.

Yet the process is nonetheless deeply troubling. A felony conviction is, and ought to be, a profoundly significant event. Its importance goes well beyond its immediate consequences, such as punishment; sentencing decisions in every jurisdiction in the United States are driven in great measure by the criminal history of the defendant. Felony convictions should neither be imposed nor overturned lightly, and under no circumstances should they be treated like a Las Vegas marriage, to be annulled when they become burdensome or inconvenient.

Vacating long-standing convictions for strategic purposes also serves to erode public confidence in the criminal justice system. If the process is perceived to be readily manipulable, or even dishonest, the damage to that confidence is likely to be substantial indeed.

A Judgment and Commitment Order imposing sentence in accordance with the foregoing memorandum will follow.

---

[11] The Court notes that it would impose the same sentence as a non-guideline sentence under 18 U.S.C. § 3553(a). In particular, the sentence imposed protects the public from further crimes by defendant; provides him with necessary mental health treatment; promotes respect for the law; provides just punishment for the offense; and affords adequate deterrence to criminal conduct.

16

/s/ F. Dennis Saylor
F. Dennis Saylor IV
United States District Judge

Dated:  April 16, 2007