AO 245B(05-MA)    (Rev. 06/05) Judgment in a Criminal Case
Sheet 1 - D. Massachusetts - 10/05

# UNITED STATES DISTRICT COURT
## District of Massachusetts

| | |
|---|---|
| UNITED STATES OF AMERICA<br>**V.**<br><br>**Matthew Marsh** | **JUDGMENT IN A CRIMINAL CASE**<br><br>Case Number: **4   05 CR 40025   - 002 - FDS**<br>USM Number: 20687-038<br><br>Alan Black |

Defendant's Attorney

☑ Additional documents attached

Memorandum of Sentencing Hearing

☐

**THE DEFENDANT:**

☑ pleaded guilty to count(s)   1-3

☐ pleaded nolo contendere to count(s) _____
which was accepted by the court.

☐ was found guilty on count(s) _____
after a plea of not guilty.

The defendant is adjudicated guilty of these offenses:

Additional Counts - See continuation page ☐

| Title & Section | Nature of Offense | Offense Ended | Count |
|---|---|---|---|
| 21 USC § 846 | Conspiracy to distribute cocaine base | 01/01/05 | 1 |
| 21 USC § 841(a)(1) | Distribution of cocaine base | 11/09/05 | 2 & 3 |

The defendant is sentenced as provided in pages 2 through ___10___ of this judgment. The sentence is imposed pursuant to the Sentencing Reform Act of 1984.

☐ The defendant has been found not guilty on count(s) _____

☐ Count(s) _____ ☐ is ☐ are  dismissed on the motion of the United States.

It is ordered that the defendant must notify the United States attorney for this district within 30 days of any change of name, residence, or mailing address until all fines, restitution, costs, and special assessments imposed by this judgment are fully paid. If ordered to pay restitution, the defendant must notify the court and United States attorney of material changes in economic circumstances.

04/09/07

Date of Imposition of Judgment

/s/ F. Dennis Saylor IV

Signature of Judge

The Honorable F. Dennis Saylor IV
U.S. District Judge

Name and Title of Judge

4/27/07

Date

AO 245B(05-MA)    (Rev. 06/05) Judgment in a Criminal Case
Sheet 2 - D. Massachusetts - 10/05

DEFENDANT: **Matthew Marsh**                          Judgment — Page    2    of    10
CASE NUMBER: **4  05  CR  40025    - 002 - FDS**

# IMPRISONMENT

The defendant is hereby committed to the custody of the United States Bureau of Prisons to be imprisoned for a total term of:     132     month(s)

This term consists of terms of 132 months on each count, to be served concurrently.

☑ The court makes the following recommendations to the Bureau of Prisons:

That the defendant participate in mental health treatment, if available at the designated BOP facility.
That the defendant participate in the 500-Hour Residential Treatment Program offered by the Bureau of Prisons.

☑ The defendant is remanded to the custody of the United States Marshal.

☐ The defendant shall surrender to the United States Marshal for this district:

☐ at _____ ☐ a.m. ☐ p.m.  on _____ .

☐ as notified by the United States Marshal.

☐ The defendant shall surrender for service of sentence at the institution designated by the Bureau of Prisons:

☐ before 2 p.m. on _____ .

☐ as notified by the United States Marshal.

☐ as notified by the Probation or Pretrial Services Office.

# RETURN

I have executed this judgment as follows:

Defendant delivered on _____ to _____

a_____ , with a certified copy of this judgment.

_____
UNITED STATES MARSHAL

By _____
DEPUTY UNITED STATES MARSHAL

✎AO 245B(05-MA)      (Rev. 06/05) Judgment in a Criminal Case
                     Sheet 3 - D. Massachusetts - 10/05

|  | Judgment—Page | 3 | of | 10 |

DEFENDANT: **Matthew Marsh**                         ⊞
CASE NUMBER: **4 05 CR 40025  - 002 - FDS**

## SUPERVISED RELEASE

☑ See continuation page

Upon release from imprisonment, the defendant shall be on supervised release for a term of :          8    year(s)

This term consists of terms of 8 years on count 1, and terms of 6 years on counts 2 & 3, all such terms to run concurrently.                                                                                                     ⊞

The defendant must report to the probation office in the district to which the defendant is released within 72 hours of release from the custody of the Bureau of Prisons.

The defendant shall not commit another federal, state or local crime.

The defendant shall not unlawfully possess a controlled substance.  The defendant shall refrain from any unlawful use of a controlled substance.  The defendant shall submit to one drug test within 15 days of release from imprisonment and at least two periodic drug tests thereafter, not to exceed  104  tests per year, as directed by the probation officer.

☐ The above drug testing condition is suspended, based on the court's determination that the defendant poses a low risk of future substance abuse.  (Check, if applicable.)

☑ The defendant shall not possess a firearm, ammunition, destructive device, or any other dangerous weapon.  (Check, if applicable.)

☑ The defendant shall cooperate in the collection of DNA as directed by the probation officer.  (Check, if applicable.)

☐ The defendant shall register with the state sex offender registration agency in the state where the defendant resides, works, or is a student, as directed by the probation officer.  (Check, if applicable.)

☐ The defendant shall participate in an approved program for domestic violence.  (Check, if applicable.)

If this judgment imposes a fine or restitution, it is a condition of supervised release that the defendant pay in accordance with the Schedule of Payments sheet of this judgment.

The defendant must comply with the standard conditions that have been adopted by this court as well as with any additional conditions on the attached page.

## STANDARD CONDITIONS OF SUPERVISION

1) the defendant shall not leave the judicial district without the permission of the court or probation officer;

2) the defendant shall report to the probation officer and shall submit a truthful and complete written report within the first five days of each month;

3) the defendant shall answer truthfully all inquiries by the probation officer and follow the instructions of the probation officer;

4) the defendant shall support his or her dependents and meet other family responsibilities;

5) the defendant shall work regularly at a lawful occupation, unless excused by the probation officer for schooling, training, or other acceptable reasons;

6) the defendant shall notify the probation officer at least ten days prior to any change in residence or employment;

7) the defendant shall refrain from excessive use of alcohol and shall not purchase, possess, use, distribute, or administer any controlled substance or any paraphernalia related to any controlled substances, except as prescribed by a physician;

8) the defendant shall not frequent places where controlled substances are illegally sold, used, distributed, or administered;

9) the defendant shall not associate with any persons engaged in criminal activity and shall not associate with any person convicted of a felony, unless granted permission to do so by the probation officer;

10) the defendant shall permit a probation officer to visit him or her at any time at home or elsewhere and shall permit confiscation of any contraband observed in plain view of the probation officer;

11) the defendant shall notify the probation officer within seventy-two hours of being arrested or questioned by a law enforcement officer;

12) the defendant shall not enter into any agreement to act as an informer or a special agent of a law enforcement agency without the permission of the court; and

13) as directed by the probation officer, the defendant shall notify third parties of risks that may be occasioned by the defendant's criminal record or personal history or characteristics and shall permit the probation officer to make such notifications and to confirm the defendant's compliance with such notification requirement.

DEFENDANT: **Matthew Marsh**
CASE NUMBER: **4  05 CR  40025   - 002 - FDS**

Judgment—Page ___4___ of ___10___

## ADDITIONAL ☑ SUPERVISED RELEASE ☐ PROBATION TERMS

1. The defendant is prohibited from possessing a firearm or other dangerous weapon.

2. The defendant is to participate in mental health treatment program as directed by the United States Probation Office. The defendant shall be required to contribute to the costs of services for such treatment based on the ability to pay or availability of third party payment.

**Continuation of Conditions of ☐ Supervised Release ☐ Probation**

✎AO 245B(05-MA)    (Rev. 06/05) Judgment in a Criminal Case
Sheet 5 - D. Massachusetts - 10/05

|  | Judgment — Page | 5 | of | 10 |
|---|---|---|---|---|

DEFENDANT: **Matthew Marsh**
CASE NUMBER: **4  05  CR  40025   - 002  - FDS**

## CRIMINAL MONETARY PENALTIES

The defendant must pay the total criminal monetary penalties under the schedule of payments on Sheet 6.

|  | __Assessment__ | __Fine__ | __Restitution__ |
|---|---|---|---|
| **TOTALS** | $        $300.00 | $ | $ |

☐  The determination of restitution is deferred until _____. An *Amended Judgment in a Criminal Case* (AO 245C) will be entered after such determination.

☐  The defendant must make restitution (including community restitution) to the following payees in the amount listed below.

If the defendant makes a partial payment, each payee shall receive an approximately proportioned payment, unless specified otherwise in the priority order or percentage payment column below.  However, pursuant to 18 U.S.C. § 3664(i), all nonfederal victims must be paid before the United States is paid.

| __Name of Payee__ | __Total Loss*__ | __Restitution Ordered__ | __Priority or Percentage__ |
|---|---|---|---|
| | | | |

☐ See Continuation
Page

| **TOTALS** | $        $0.00 | $        $0.00 |
|---|---|---|

☐  Restitution amount ordered pursuant to plea agreement  $ _____

☐  The defendant must pay interest on restitution and a fine of more than $2,500, unless the restitution or fine is paid in full before the fifteenth day after the date of the judgment, pursuant to 18 U.S.C. § 3612(f).  All of the payment options on Sheet 6 may be subject to penalties for delinquency and default, pursuant to 18 U.S.C. § 3612(g).

☐  The court determined that the defendant does not have the ability to pay interest and it is ordered that:

☐ the interest requirement is waived for the    ☐ fine    ☐ restitution.

☐ the interest requirement for the    ☐ fine    ☐ restitution is modified as follows:

* Findings for the total amount of losses are required under Chapters 109A, 110, 110A, and 113A of Title 18 for offenses committed on or after September 13, 1994, but before April 23, 1996.

AO 245B(05-MA)   (Rev. 06/05) Judgment in a Criminal Case
Sheet 6 - D. Massachusetts - 10/05

Judgment — Page   6   of   10

DEFENDANT:   **Matthew Marsh**
CASE NUMBER:   **4   05  CR  40025   - 002 - FDS**

# SCHEDULE OF PAYMENTS

Having assessed the defendant's ability to pay, payment of the total criminal monetary penalties are due as follows:

**A** ☐ Lump sum payment of $ _____ due immediately, balance due

☐ not later than _____ , or
☐ in accordance ☐ C,   ☐ D,   ☐ E, or   ☐ F below; or

**B** ☒ Payment to begin immediately (may be combined with ☐ C,   ☐ D, or   ☐ F below); or

**C** ☐ Payment in equal _____ (e.g., weekly, monthly, quarterly) installments of $ _____ over a period of _____ (e.g., months or years), to commence _____ (e.g., 30 or 60 days) after the date of this judgment; or

**D** ☐ Payment in equal _____ (e.g., weekly, monthly, quarterly) installments of $ _____ over a period of _____ (e.g., months or years), to commence _____ (e.g., 30 or 60 days) after release from imprisonment to a term of supervision; or

**E** ☐ Payment during the term of supervised release will commence within _____ (e.g., 30 or 60 days) after release from imprisonment.  The court will set the payment plan based on an assessment of the defendant's ability to pay at that time; or

**F** ☐ Special instructions regarding the payment of criminal monetary penalties:

Unless the court has expressly ordered otherwise, if this judgment imposes imprisonment, payment of criminal monetary penalties is due during imprisonment.   All criminal monetary penalties, except those payments made through the Federal Bureau of Prisons' Inmate Financial Responsibility Program, are made to the clerk of the court.

The defendant shall receive credit for all payments previously made toward any criminal monetary penalties imposed.

☐ Joint and Several

☐ See Continuation Page

Defendant and Co-Defendant Names and Case Numbers (including defendant number), Total Amount, Joint and Several Amount, and corresponding payee, if appropriate.

☐ The defendant shall pay the cost of prosecution.

☐ The defendant shall pay the following court cost(s):

☐ The defendant shall forfeit the defendant's interest in the following property to the United States:

Payments shall be applied in the following order: (1) assessment, (2) restitution principal, (3) restitution interest, (4) fine principal, (5) fine interest, (6) community restitution, (7) penalties, and (8) costs, including cost of prosecution and court costs.

AO 245B    (Rev. 06/05) Criminal Judgment
Attachment (Page 1) — Statement of Reasons - D. Massachusetts - 10/05

---

DEFENDANT:     **Matthew Marsh**                                    Judgment — Page **7** of **10**
CASE NUMBER:  **4  05  CR  40025   - 002 - FDS**
DISTRICT:           **MASSACHUSETTS**

# STATEMENT OF REASONS

## I    COURT FINDINGS ON PRESENTENCE INVESTIGATION REPORT

A  ☑    **The court adopts the presentence investigation report without change.**

B  ☐    **The court adopts the presentence investigation report with the following changes.**
(Check all that apply and specify court determination, findings, or comments, referencing paragraph numbers in the presentence report, if applicable.)
(Use Section VIII if necessary.)

1  ☐   **Chapter Two of the U.S.S.G. Manual** determinations by court (including changes to base offense level, or
specific offense characteristics):

2  ☐   **Chapter Three of the U.S.S.G. Manual** determinations by court (including changes to victim-related adjustments,
role in the offense, obstruction of justice, multiple counts, or acceptance of responsibility):

3  ☐   **Chapter Four of the U.S.S.G. Manual** determinations by court (including changes to criminal history category or
scores, career offender, or criminal livelihood determinations):

4  ☐   **Additional Comments or Findings** (including comments or factual findings concerning certain information in the
presentence report that the Federal Bureau of Prisons may rely on when it makes inmate classification, designation,
or programming decisions):

C  ☐    **The record establishes no need for a presentence investigation report pursuant to Fed.R.Crim.P. 32.**

## II    COURT FINDING ON MANDATORY MINIMUM SENTENCE (Check all that apply.)

A  ☐    No count of conviction carries a mandatory minimum sentence.

B  ☑    Mandatory minimum sentence imposed.

C  ☐    One or more counts of conviction alleged in the indictment carry a mandatory minimum term of imprisonment, but the
sentence imposed is below a mandatory minimum term because the court has determined that the mandatory minimum
does not apply based on

☐  findings of fact in this case
☐  substantial assistance (18 U.S.C. § 3553(e))
☐  the statutory safety valve (18 U.S.C. § 3553(f))

## III    COURT DETERMINATION OF ADVISORY GUIDELINE RANGE (BEFORE DEPARTURES):

Total Offense Level:          23
Criminal History Category:   IV
Imprisonment Range:       120      to   120        months
Supervised Release Range:    8      to    8          years
Fine Range: $   10,000      to   $   8,000,000
☑  Fine waived or below the guideline range because of inability to pay.

DEFENDANT:  **Matthew Marsh**                                               Judgment — Page  8  of  10
CASE NUMBER: **4  05 CR 40025  - 002 - FDS**
DISTRICT:        **MASSACHUSETTS**

# STATEMENT OF REASONS

**IV**   **ADVISORY GUIDELINE SENTENCING DETERMINATION** (Check only one.)

A  ☐   The sentence is within an advisory guideline range that is not greater than 24 months, and the court finds no reason to depart.

B  ☐   The sentence is within an advisory guideline range that is greater than 24 months, and the specific sentence is imposed for these reasons.
             (Use Section VIII if necessary.)

C  ☑   The court departs from the advisory guideline range for reasons authorized by the sentencing guidelines manual.
             (Also complete Section V.)

D  ☐   The court imposed a sentence outside the advisory sentencing guideline system.  (Also complete Section VI.)

**V**   **DEPARTURES AUTHORIZED BY THE ADVISORY SENTENCING GUIDELINES** (If applicable.)

A  **The sentence imposed departs** (Check only one.):
         ☐  below the advisory guideline range
         ☑  above the advisory guideline range

B  **Departure based on** (Check all that apply.):

   1      **Plea Agreement** (Check all that apply and check reason(s) below.):
             ☐  5K1.1 plea agreement based on the defendant's substantial assistance
             ☐  5K3.1 plea agreement based on Early Disposition or "Fast-track" Program
             ☐  binding plea agreement for departure accepted by the court
             ☐  plea agreement for departure, which the court finds to be reasonable
             ☐  plea agreement that states that the government will not oppose a defense departure motion.

   2      **Motion Not Addressed in a Plea Agreement** (Check all that apply and check reason(s) below.):
             ☐  5K1.1 government motion based on the defendant's substantial assistance
             ☐  5K3.1 government motion based on Early Disposition or "Fast-track" program
             ☐  government motion for departure
             ☐  defense motion for departure to which the government did not object
             ☐  defense motion for departure to which the government objected

   3      **Other**
             ☑  Other than a plea agreement or motion by the parties for departure (Check reason(s) below.):

C  **Reason(s) for Departure** (Check all that apply other than 5K1.1 or 5K3.1.)

| | | | | | | | |
|---|---|---|---|---|---|---|---|
| ☐ | 4A1.3 | Criminal History Inadequacy | ☐ | 5K2.1 | Death | ☐ | 5K2.11 Lesser Harm |
| ☐ | 5H1.1 | Age | ☐ | 5K2.2 | Physical Injury | ☐ | 5K2.12 Coercion and Duress |
| ☐ | 5H1.2 | Education and Vocational Skills | ☐ | 5K2.3 | Extreme Psychological Injury | ☐ | 5K2.13 Diminished Capacity |
| ☐ | 5H1.3 | Mental and Emotional Condition | ☐ | 5K2.4 | Abduction or Unlawful Restraint | ☐ | 5K2.14 Public Welfare |
| ☐ | 5H1.4 | Physical Condition | ☐ | 5K2.5 | Property Damage or Loss | ☐ | 5K2.16 Voluntary Disclosure of Offense |
| ☐ | 5H1.5 | Employment Record | ☐ | 5K2.6 | Weapon or Dangerous Weapon | ☐ | 5K2.17 High-Capacity, Semiautomatic Weapon |
| ☐ | 5H1.6 | Family Ties and Responsibilities | ☐ | 5K2.7 | Disruption of Government Function | ☐ | 5K2.18 Violent Street Gang |
| ☐ | 5H1.11 | Military Record, Charitable Service, Good Works | ☐ | 5K2.8 | Extreme Conduct | ☐ | 5K2.20 Aberrant Behavior |
| | | | ☐ | 5K2.9 | Criminal Purpose | ☐ | 5K2.21 Dismissed and Uncharged Conduct |
| ☑ | 5K2.0 | Aggravating or Mitigating Circumstances | ☐ | 5K2.10 | Victim's Conduct | ☐ | 5K2.22 Age or Health of Sex Offenders |
| | | | | | | ☐ | 5K2.23 Discharged Terms of Imprisonment |
| | | | | | | ☐ | Other guideline basis (e.g., 2B1.1 commentary) |

D  **Explain the facts justifying the departure.**  (Use Section VIII if necessary.)

             See attached sentencing memorandum.

DEFENDANT: **Matthew Marsh**
CASE NUMBER: **4  05 CR 40025    - 002 - FDS**
DISTRICT: **MASSACHUSETTS**

Judgment — Page  9  of    10

# STATEMENT OF REASONS

**VI**  **COURT DETERMINATION FOR SENTENCE OUTSIDE THE ADVISORY GUIDELINE SYSTEM**
(Check all that apply.)

A  **The sentence imposed is** (Check only one.):
☐ below the advisory guideline range
☐ above the advisory guideline range

B  **Sentence imposed pursuant to** (Check all that apply.):

1  **Plea Agreement** (Check all that apply and check reason(s) below.):
☐ binding plea agreement for a sentence outside the advisory guideline system accepted by the court
☐ plea agreement for a sentence outside the advisory guideline system, which the court finds to be reasonable
☐ plea agreement that states that the government will not oppose a defense motion to the court to sentence outside the advisory guideline system

2  **Motion Not Addressed in a Plea Agreement** (Check all that apply and check reason(s) below.):
☐ government motion for a sentence outside of the advisory guideline system
☐ defense motion for a sentence outside of the advisory guideline system to which the government did not object
☐ defense motion for a sentence outside of the advisory guideline system to which the government objected

3  **Other**
☐ Other than a plea agreement or motion by the parties for a sentence outside of the advisory guideline system (Check reason(s) below.):

C  **Reason(s) for Sentence Outside the Advisory Guideline System** (Check all that apply.)

☐ the nature and circumstances of the offense and the history and characteristics of the defendant pursuant to 18 U.S.C. § 3553(a)(1)
☐ to reflect the seriousness of the offense, to promote respect for the law, and to provide just punishment for the offense (18 U.S.C. § 3553(a)(2)(A))
☐ to afford adequate deterrence to criminal conduct (18 U.S.C. § 3553(a)(2)(B))
☐ to protect the public from further crimes of the defendant (18 U.S.C. § 3553(a)(2)(C))
☐ to provide the defendant with needed educational or vocational training, medical care, or other correctional treatment in the most effective manner (18 U.S.C. § 3553(a)(2)(D))
☐ to avoid unwarranted sentencing disparities among defendants (18 U.S.C. § 3553(a)(6))
☐ to provide restitution to any victims of the offense (18 U.S.C. § 3553(a)(7))

D  **Explain the facts justifying a sentence outside the advisory guideline system.**  (UseSection VIII if necessary.)

| | |
|---|---|
| DEFENDANT: **Matthew Marsh** | Judgment — Page  10  of  10 |
| CASE NUMBER: **4  05  CR  40025  - 002 - FDS** | |
| DISTRICT:         **MASSACHUSETTS** | |

# STATEMENT OF REASONS

## VII   COURT DETERMINATIONS OF RESTITUTION

A   ☑   Restitution Not Applicable.

B   Total Amount of Restitution:   _____

C   Restitution not ordered (Check only one.):

1   ☐   For offenses for which restitution is otherwise mandatory under 18 U.S.C. § 3663A, restitution is not ordered because the number of identifiable victims is so large as to make restitution impracticable under 18 U.S.C. § 3663A(c)(3)(A).

2   ☐   For offenses for which restitution is otherwise mandatory under 18 U.S.C. § 3663A, restitution is not ordered because determining complex issues of fact and relating them to the cause or amount of the victims' losses would complicate or prolong the sentencing process to a degree that the need to provide restitution to any victim would be outweighed by the burden on the sentencing process under 18 U.S.C. § 3663A(c)(3)(B).

3   ☐   For other offenses for which restitution is authorized under 18 U.S.C. § 3663 and/or required by the sentencing guidelines, restitution is not ordered because the complication and prolongation of the sentencing process resulting from the fashioning of a restitution order outweigh the need to provide restitution to any victims under 18 U.S.C. § 3663(a)(1)(B)(ii).

4   ☐   Restitution is not ordered for other reasons.  (Explain.)

D   ☐   Partial restitution is ordered for these reasons (18 U.S.C. § 3553(c)):

## VIII  ADDITIONAL FACTS JUSTIFYING THE SENTENCE IN THIS CASE (If applicable.)

Sections I, II, III, IV, and VII of the Statement of Reasons form must be completed in all felony cases.

| | |
|---|---|
| Defendant's Soc. Sec. No.:   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 | Date of Imposition of Judgment |
| | 04/09/07 |
| Defendant's Date of Birth:   00/00/75 | |
| | /s/ F. Dennis Saylor IV |
| Defendant's Residence Address:   Federal custody | Signature of Judge |
| | The Honorable F. Dennis Saylor IV      U.S. District Judge |
| Defendant's Mailing Address:          Same as above | Name and Title of Judge |
| | Date Signed   4/27/07 |

# UNITED STATES DISTRICT COURT
# DISTRICT OF MASSACHUSETTS

_____

|  |  |
|---|---|
| UNITED STATES of AMERICA | ) |
|  | ) |
| v. | )     **Criminal No.** |
|  | )     **05-40025-FDS** |
| MATTHEW MARSH, | ) |
|  | ) |
| Defendant. | ) |

_____

## MEMORANDUM ON SENTENCING

**SAYLOR, J.**

This is a criminal prosecution for trafficking in crack cocaine. The principal issues at sentencing arise out of the fact that defendant Matthew Marsh successfully moved after his plea of guilty to vacate two state convictions that would have otherwise qualified him as a career offender.

Defendant pleaded guilty in this case in October 2006. He then moved in state court to vacate two prior convictions for resisting arrest. Those convictions would have qualified as "crimes of violence" under the career offender guidelines, U.S.S.G. § 4B1.1, and would have dramatically raised his guideline sentencing range, from 120 months to 262 to 327 months.

The claimed basis for the motions to vacate the convictions was that defendant was not mentally competent at the time of the pleas of guilty in 2000 and 2004. Defendant contends (and the government does not dispute) that he suffers from bipolar disorder and post-traumatic stress disorder, and that his condition was not being treated at the time with medication. Defendant also forthrightly, if inaccurately, advised the state court that if his motions to vacate were not granted, he would be facing "30 to life" in federal court. The state court granted the motions

nine days before the scheduled sentencing.

Defendant does *not* contend in this Court that he is incompetent, or that he was incompetent at the time of his plea in October 2006—even though he continues to suffer from the same mental condition, and even though he was not receiving treatment at the time of the plea.

The basic questions presented are (1) whether—notwithstanding the fact that neither defendant nor the government contends that he is incompetent—this Court should order a hearing, or direct that the defendant be examined py a psychiatrist or psychologist, to determine his mental competency under 18 U.S.C. § 4241, and (2) whether the Court must ignore evidence of the criminal conduct underlying the vacated conviction.  For the reasons set forth below, the Court answers both questions in the negative.

I.      **Background**

Defendant Matthew Marsh pleaded guilty on October 23, 2006, to a three-count indictment charging him with conspiracy to distribute cocaine base in violation of 21 U.S.C. § 846 (Count 1) and distribution of cocaine base in violation of 21 U.S.C. § 841(a)(1) (Counts 2 and 3).  The cocaine base was in the form of crack cocaine, and the amount attributable to Marsh is 64 grams, or about two and one-quarter ounces.

Based on the drug weight alone, defendant is subject to a mandatory minimum penalty of five years' imprisonment.  *See* 21 U.S.C. § 841(b)(1)(B)(iii).  He also has a prior conviction for a felony drug offense; he pleaded guilty in this Court in 1996 to conspiracy to import cocaine base,

importation of cocaine base, and possession with intent to distribute cocaine base.[1]  That

conviction, standing alone, increases defendant's mandatory minimum penalty to ten years'

imprisonment.  See 21 U.S.C. § 841(b)(1)(B)(iii).[2]  Defendant does not dispute the validity of

that conviction.

Defendant also had—at least as of October 23, 2006, the date he pleaded guilty—two

relevant prior state convictions.[3]  The two convictions are as follows:

(1)     a conviction in the Leominster District Court on January 13, 2000, for resisting

arrest and disorderly conduct; and

(2)     a conviction in the Fitchburg District Court on May 6, 2004, for resisting arrest

and disorderly conduct.

Defendant was represented by counsel in both instances.  Both convictions resulted in very light

penalties; he was sentenced to pay a fine of $100 on the 2000 conviction and to less than eight

months' probation on the 2004 conviction.[4]

Had they not been vacated, the 2000 and 2004 convictions for resisting arrest would have

---

[1] The government filed an information pursuant to 21 U.S.C. § 851 describing that conviction and indicating its intent to rely upon it to increase defendant's punishment.

[2] Defendant contends that he was only a "minor participant" in the criminal activity within the meaning of § 3B1.1(b) of the sentencing guidelines, and therefore entitled to a two-level downward adjustment in the offense level.  According to the Presentence Report, he drove his co-conspirator to deliver the drugs (she had lost her driver's license), handed her the drugs during the transactions, and counted the money received; he was paid in crack cocaine.  The Court does not need to decide the issue, however, as the application of the mandatory minimum sentence makes the issue moot.

[3] Defendant's criminal history also includes, among other things, a conviction in the Fitchburg District Court on July 17, 2003, for malicious destruction of property and triggering a false alarm.  He did not seek to vacate that conviction on grounds of lack of competency, notwithstanding the fact that it occurred between 2000 and 2004.

[4] Defendant subsequently violated his probation—the nature of the violation is not set forth in the record—and the probation apparently was terminated at that point without further penalty.

3

had a dramatic impact on defendant's guideline sentence.  Under the career offender guidelines,

U.S.S.G. § 4B1.1, convictions for resisting arrest are considered convictions for "crimes of

violence."  *See, e.g., United States v. Wardrick*, 350 F.3d 446, 455 (4th Cir. 2003).  Because

defendant (1) is 31 years old, (2) is being sentenced for a controlled substance offense, and (3)

would have had three prior felony convictions for crimes of violence (the two prior state

convictions) and a controlled substance offense (the prior federal conviction), the defendant

would have been deemed a "career offender."  Under the sentencing guidelines, his sentencing

range would be thereby increased from 120 months (the mandatory minimum) to 262-327

months, or from 10 years to approximately 21-27 years.

However, on March 9, 2007, two weeks before the scheduled sentencing in this Court,

defendant moved in the Fitchburg and Leominster District Courts to have the two state

convictions vacated.   As grounds for those motions, defendant contended that, due to his mental

condition, he "did not possess a sufficient present ability to consult with his lawyer with a

reasonable degree of rational understanding or a factual understanding of the proceedings against

him . . . ."

In support of those motions, defendant submitted a report of Ronald Ebert, Ph.D., a

forensic psychologist, dated March 5, 2007, as well as affidavits from Dr. Ebert and defendant.

Dr. Ebert had not examined or treated defendant prior to February 2007.  He concluded, based on

two interviews with the defendant in February and a review of his medical records and other

materials, that the defendant was currently suffering from bipolar disorder, post-traumatic stress

disorder, and alcohol and cocaine dependence.  In his affidavit, he concluded that "to a

reasonable degree of psychological certainty that on both 10/22/99 [the date of the incident

4

leading to the January 2000 plea] and 4/30/04 [the date of the incident leading to the May 2004 plea], Mr. Marsh was suffering from symptoms of his major mental illness such as agitation, disorganization, confusion and self-destructive behaviors." He also attested:

> It is further my opinion to a reasonable degree of psychological certainty that Mr. Marsh's untreated mental illness continued through the periods that he entered pleas. In his untreated state he would not have had the ability to make a waiver that was knowing and intelligent or a product of a clear and rational thought.[5]

In both motions, defendant specifically advised the District Court that "[t]ime is of the essence on this motion [to vacate] as it appears that because of the two prior convictions for resisting arrest, the defendant has been classified as a career offender in federal court and . . . is facing 30 to life in Worcester Federal District Court." It is unclear what, if any, position was taken in response by the Worcester County District Attorney's Office. On March 14, 2007—nine days before the scheduled sentencing in this Court—the motions to withdraw the pleas were granted by the state court and the matters were set for retrial.[6]

Defendant submitted the same report written by Dr. Ebert to this Court. He does not, however, claim that he is now mentally incompetent, or that he was incompetent at the time of his change of plea in October 2006.

## II.   **Analysis**

There are two principal issues raised by the vacating of the convictions: (1) whether the Court should order a hearing, or order that the defendant undergo a psychiatric or psychological

---

[5] Dr. Ebert also noted:

> In addition, Mr. Marsh has reported to me that he does not cooperate with medication and appears not to have been taking medication at those times. He may have been abusing substances, which only worsens his psychiatric condition.

[6] The judge who granted the motions was the same judge who presided over the changes of plea.

examination, to determine whether he is mentally competent pursuant to 18 U.S.C. § 4241; and
(2) whether this Court may consider the conduct underlying the two vacated convictions in
imposing sentence in this case.

### A.    Whether the Defendant Is Mentally Competent

The first issue that the Court must address is whether it should conduct a hearing or order
that the defendant be examined to determine if he is mentally competent.  As noted, defendant
argued in the state court that he was not competent in 2000 and 2004 due to his mental condition,
principally bipolar disorder, for which he had received no treatment.  That argument was based
on the submissions by Dr. Ebert, who interviewed defendant in February 2007 and rendered his
opinion—in hindsight—in March 2007.

Defendant has taken a different position in this Court.  During the plea colloquy on
October 23, 2006, the Court and the defendant had the following exchange:

> THE COURT:   Have you been treated recently for any mental illness or
> psychiatric or psychological problem of any kind?
>
> THE DEFENDANT:   Yes, I have.
>
> THE COURT:   What is that?
>
> THE DEFENDANT:   Rapid cycle bipolar disorder.  . . . It's a form of bipolar.
> It's just it's a rapid cycle, rather than a normal cycle, I guess.  . . .
>
> THE COURT:   And are you on any medication for that?
>
> THE DEFENDANT:   No, sir.
>
> THE COURT:   Are you receiving any treatment for that at all?
>
> THE DEFENDANT:   Yes, I am.
>
> THE COURT:   What treatment are you receiving?  . . .

6

THE DEFENDANT:  I have monthly psychology appointments at the institution that I'm at.  I'm supposed to be on medication, but I'm actually not on medication, because of the adverse effects I have on that.  So I decline the medication.

THE COURT:   So you've tried the medication, and you didn't like it, because of the adverse effects?

THE DEFENDANT:  Yes, sir.

THE COURT:   So you're presently unmedicated?

THE DEFENDANT:  Yes.

THE COURT:   All right.  And does your disorder interfere in any way with your ability to understand what's going on here today?

THE DEFENDANT:  No, sir.

THE COURT:   Is there any doubt in your mind at all that you understand what we're about to do here?

THE DEFENDANT:  No, sir.

THE COURT:   All right.  Mr. Black, is there any reason you're aware of why we should not continue?

MR. BLACK:  Not at all.  I have been aware of his mental illness for quite some time, and I have never had any trouble being understood by him, understanding him, communicating with him in any way, including up until today.

Defendant thus freely acknowledged in October 2006—under oath and with the

assistance of counsel—that he was mentally competent, notwithstanding the fact that he was not

taking any medication for his bipolar disorder or any other mental health condition.  The Court,

having no reason to conclude otherwise, found that defendant was fully competent.  And

defendant does not now claim that he was incompetent in October 2006, or that he is

incompetent now.[7]

This Court has been placed in a somewhat difficult and uncomfortable position. The positions taken by defendant as to his mental health are, at a minimum, substantially inconsistent.[8] He has not sought to be declared incompetent in this Court (where it would operate to his disadvantage, as it might lead to civil commitment under 18 U.S.C. § 4241), but did so in the state court (where it operated to his advantage, to avoid significant consequences under the career offender guidelines).

The Court has no authority or jurisdiction to reinstate the two state convictions, or to revisit the factual predicates underlying the decisions to vacate those convictions. To the contrary, it is required to accept the vacating of the state convictions, even if it believes that the state court's decision may have been incorrect. *See, e.g., United States v. Guthrie*, 931 F.2d 564, 572 (9th Cir. 1991); *United States v. Cox*, 245 F.3d 126, 130 (2d Cir. 2001).

The issue before this Court is thus simply whether it should conduct a hearing, or have defendant examined by a psychiatrist or psychologist, pursuant to 18 U.S.C. § 4241. Based on the undisputed evidence, the Court concludes that there is no reasonable cause to believe that the

---

[7] Although defendant suggests that an adjustment for diminished capacity would be appropriate under § 5k2.13, it would not affect the guidelines sentence, as the mandatory minimum would apply in any event.

[8] According to defendant,

> The psychological circumstances of the defendant were quite different at the time of the earlier pleas. He was on the street abusing alcohol and other drugs. This contributed to the behavior underlying the resisting arrest charges. In the case at hand, the defendant was incarcerated and away from the circumstances that contributed to the bi-polar disease flaring up.

(Deft. Supp. Sent. Mem. at 2-3). The Court does not doubt that defendant's abuse of alcohol and drugs contributed to his criminal conduct, and did not have a positive impact on his mental state. Nonetheless, it is entirely unclear how defendant could be incompetent in 2004 but competent in 2006, with the same mental condition (bipolar disorder and PTSD) and the same course of treatment (effectively, none), whether or not he was also abusing alcohol and drugs.

8

defendant is presently suffering from a mental disease or defect rendering him mentally incompetent to the extent that he is unable to understand the nature and consequences of the proceedings against him or to assist properly in his defense, or that he was so afflicted in October 2006. Accordingly, there is no reason to order a hearing or a psychiatric or psychological examination to determine his competency. The Court makes no conclusion as to his competency at any other period of time.

> **B.** **Whether Information from the Police Reports May Be Considered and Used to Increase the Sentence**

The second issue is whether the Court may consider, for purposes of sentencing, the information contained in the Presentence Report concerning the now-vacated convictions, and if so whether it may increase the sentence in reliance on that information. Although the convictions themselves have been vacated, the Presentence Report contains a description of the conduct underlying those convictions, taken from the criminal complaints and the police reports.

> **1.** **Information in the Presentence Report Concerning Underlying Conduct**

The first conviction was based on an incident that took place in October 1999. According to the PSR, Leominster police officers responded to a call from a Denny's restaurant that defendant was creating a disturbance. When the police arrived, defendant had apparently knocked his food and tableware on the floor, "was making loud and incoherent noises," and "appeared to be severely incapacitated due to extreme inebriation." He was arrested for disturbing the peace. While he was being placed in the cruiser, he repeatedly kicked one of the arresting officers and had to be subdued with pepper spray.

The second conviction was based on an incident that took place in April 2004.

According to the PSR, defendant was arrested by the Fitchburg police at a bar after he disrupted

an arrest and would not obey commands to leave the area. He then resisted his own arrest and

was "extremely uncooperative, volatile, belligerent, and refused booking."

### 2.    Consideration of the Information for Sentencing Purposes

Defendant contends that the Court not only must disregard the vacated convictions, but

also the conduct underlying those convictions. The First Circuit has previously held exactly the

opposite—that a sentencing court may in fact take into account reliable evidence that the

defendant committed the criminal conduct underlying any vacated convictions. *See United*

*States v. Hardy*, 99 F.3d 1242, 1250-51 (1st Cir. 1996); *accord, e.g., United States v. Cash*, 983

F.2d 558, 562-63 (4th Cir. 1992).

Defendant, however, contends that the subsequent decision of the United States Supreme

Court in *Shepard v. United States*, 544 U.S. 13 (2005), precludes consideration of information

contained in a police report for sentencing purposes. In *Shepard*, the Supreme Court held that

any inquiry under the Armed Career Criminal Act, 18 U.S.C. § 924(e), to determine whether a

predicate conviction was a violent felony must be limited to judicial records (such as the terms of

a plea agreement or the transcript of a plea colloquy in which the defendant confirmed the

factual basis for the plea). 544 U.S. at 26. Such an inquiry may not be based upon non-judicial

records, including information in police reports. *Id.*

*Shepard*, however, does not mandate a different result here. It was not a guidelines case,

and did not rest on Sixth Amendment or other constitutional grounds; rather, it expressly

involved "an issue of statutory interpretation." 544 U.S. at 23. The opinion contained no

language suggesting that its holding or reasoning should be extended to sentencing proceedings under the guidelines.

Furthermore, disregarding reliable information from police reports would run directly contrary to both 18 U.S.C. § 3661 and its guideline counterpart, § 1B1.4.  Section 3661 provides:

> No limitation shall be placed on the information concerning the background, character, *and conduct* of a person convicted of an offense which a court of the United States may receive and consider for the purposes of imposing an appropriate sentence.

(emphasis added).[9]  It would be anomalous, indeed, if during the sentencing process the Court could consider self-serving and often unverifiable information from a defendant (for example, statements concerning childhood abuse or trauma), but not an official record from a law enforcement agency concerning conduct that led directly to a criminal charge (and conviction, albeit later vacated).

Furthermore, the guidelines themselves contemplate that a sentencing court may want to consider the criminal conduct underlying a reversed, vacated, or invalidated conviction.  Under Application Note 6 to § 4A1.2, where a conviction has been vacated because of an error of law or subsequently discovered evidence, or because it is constitutionally invalid, the sentencing court may nonetheless consider "the criminal conduct underlying any [such] conviction" for purposes of determining whether the defendant's criminal history category substantially under-represents the seriousness of his criminal history or the likelihood he will commit other crimes.

---

[9] Section 1B1.4 of the sentencing guidelines likewise provides:

> In determining the sentence to impose within the guideline range, or whether a departure from the guidelines is warranted, the court may consider, without limitation, any information concerning the background, character and conduct of the defendant, unless otherwise prohibited by law.  *See* 18 U.S.C. § 3661.

11

Information in police reports may only be considered, however, if it is reliable.  *See*

*Hardy*, 99 F.3d at 1251; *United States v. Delmarle*, 99 F.3d 80, 86 (2d Cir. 1996) (court properly

relied on investigative report of U.S. military police).  The Court concludes that the information

in the police reports in this case is sufficiently reliable that it may be considered in the

sentencing process.  Defendant has disputed only the validity of the convictions; he has

submitted no information concerning the underlying facts, much less contradicting them.  There

is nothing in the reports, at least as set forth in the PSR, that would cause the Court to question

their accuracy or reliability.  Accordingly, the Court will take into account the information set

forth in those reports in making the sentencing decision.

### 3.   <u>Availability of an Upward Departure</u>

The question then becomes whether the Court may depart upward based on the

information in the police reports concerning the conduct underlying the vacated convictions.  As

noted, when a conviction is vacated, the sentencing court retains the power under the sentencing

guidelines to consider the underlying conduct for purposes of determining the adequacy of the

criminal history category.  *See* U.S.S.G. § 4A1.2, Application Note 6.  Ordinarily, if the

sentencing court determines that the criminal history category is not appropriate, it may depart

upward and use the "criminal history category applicable to defendants whose criminal history

or likelihood to recidivate most resembles the defendant's." U.S.S.G. § 4A1.3 (a)(4)(A).  Thus,

under the guidelines, where the criminal history category does not adequately reflect the

seriousness of the defendant's past criminal conduct, the normal course is to proceed

"horizontally across the sentencing table through successively higher CHCs until it reaches an

appropriate, or 'reflective,' sentencing range." *Hardy*, 99 F.3d at 1248; *see also Guthrie*, 931

12

F.2d at 573.

Here, defendant's total offense level is 23; even if the Court departed upward all the way to the highest criminal history category (VI), the guideline range would be 92-115 months, or below the 120-month mandatory minimum. The "horizontal" adjustment under § 4A1.3(a)(4)(A) would thus have no effect on the sentence.

There are two other possible options for a departure under the guidelines. First, the guidelines also permit the sentencing court under some circumstances to move "vertically" down the Criminal History Category VI column until it finds an appropriate guidelines range. U.S.S.G. § 4A1.3(a)(4)(B); *Hardy*, 99 F.3d at 1248 n.8; *see Cash*, 983 F.2d at 561 n.6. Such departures are intended for "extreme" cases involving "egregious past criminal conduct." *Hardy*, 99 F.3d at 1248. Alternatively, the Court may depart under § 5K2.0(a)(1)(A), if there exists an aggravating circumstance of a kind, or to a degree, not adequately taken into consideration by the sentencing guidelines.

Ordinarily, departure issues involving past criminal conduct are handled within the framework of § 4A1.3, whereas departure issues involving the offense of conviction are handled under § 5K2.0. *See Hardy*, 99 F.3d at 1248 (departures under § 5K2.0 focus primarily on "'unusual' attributes of the offense of conviction, rather than any underrepresentation of past criminal conduct in the defendant's CHC") (emphasis deleted). Nonetheless, the Court believes that this case is more appropriately considered under § 5K2.0. Among other things, the career offender guidelines and the criminal history categories do not neatly intersect, and a case may thus be exceptional within the meaning of § 5K2.0 even though it is not an "extreme" case involving "egregious" conduct within the meaning of § 4A1.3(a)(4)(B).

13

This is such a case.  Specifically, the Court concludes that an upward departure is warranted under § 5K2.0 because the guidelines do not contemplate the peculiar constellation of events presented by this case.  Although the guidelines contemplate that convictions might be vacated, they do so only in the context of considering whether a criminal history category adjustment is appropriate.  The Sentencing Commission does not appear to have considered a situation such as the present one, where convictions have been vacated that might otherwise affect the sentencing range under the career offender guidelines (but not the range based on the ordinary offense level and the criminal history category), and where there is reliable evidence concerning the conduct underlying the convictions.  The Court therefore concludes that there exists here an aggravating circumstance of a kind, or to a degree, not adequately taken into consideration by the Sentencing Commission in formulating the guidelines within the meaning of § 5K2.0(a)(1)(A).

### C.    __Imposition of Sentence__

There remains the issue of what sentence to impose.  As noted, the career offender guidelines in this case would have produced a sentence of at least 262 months had the convictions not been vacated.   The guideline sentence, by contrast, is the mandatory minimum term of 120 months.

The Court considered imposing a sentence that at least approached a level of punishment commensurate with the career offender guidelines, in order to avoid rewarding defendant's inconsistent and arguably manipulative positions concerning his mental health, and to treat him in substance as a career offender.  The Court has concluded, however, that an upward departure is appropriate, but that the sentence should be substantially closer to the 120-month guideline

sentence than to the 262-month minimum career offender sentence.

As an initial matter, the 120-month guideline sentence does not adequately take into account the conduct underlying the vacated convictions. Defendant's conduct underlying the vacated convictions was violent and anti-social, and in one instance involved an assault on a law enforcement officer. If the Court were to impose a 120-month guideline sentence, defendant would receive the exact same sentence that he would have received had he not engaged in that behavior.

Having said that, there are circumstances of a mitigating nature that suggest that a sentence of substantially less than 262 months is appropriate. First, and foremost, the government does not seek a sentence above 120 months.[10] While the Court is not bound by the government's recommendation, ordinarily the Court should undertake to impose a sentence greater than that sought by the government only with great caution and under unusual circumstances. Second, the defendant does, in fact, have a serious mental health condition that seriously affected his behavior during the relevant years. While he is not mentally incompetent, and his condition is not an excuse for his behavior, some degree of mitigation is appropriate under the circumstances. Finally, the two vacated convictions resulted in exceedingly light punishments (a $100 fine and seven-plus months' probation, respectively). Defendant's conduct was not considered particularly severe by the sentencing courts in the state system even before the convictions were vacated.

Accordingly, while the Court believes that an upward departure is appropriate, it should result in a sentence much closer to the guideline sentence than to the career offender sentence.

---

[10] Under the plea agreement, defendant also agreed that 120 months was the appropriate sentence.

Thus, the Court will impose a sentence of 132 months' imprisonment, to be followed by an eight-year term of supervised release.  Taken together, the defendant will be subject to federal supervision for the better part of two decades; the sentence is long, but not greater than necessary to achieve the purposes of sentencing.[11]

*    *    *

Vacating state court convictions for strategic purposes, particularly to avoid federal sentencing consequences, has lately become commonplace, if not routine.  *See* Julie Austin, Note, Closing a Resentencing Loophole:  A Proposal to Amend 28 U.S.C. § 2255, 79 S. Cal. L. Rev. 909 (2006) (discussing problem in context of habeas corpus proceedings, and noting that Massachusetts convictions are "particularly vulnerable" to challenge).  Under the hydraulic pressures of lengthy prospective sentences in the federal system, the impulse by defendants to vacate prior convictions is entirely understandable.

Yet the process is nonetheless deeply troubling.  A felony conviction is, and ought to be, a profoundly significant event.  Its importance goes well beyond its immediate consequences, such as punishment; sentencing decisions in every jurisdiction in the United States are driven in great measure by the criminal history of the defendant.  Felony convictions should neither be imposed nor overturned lightly, and under no circumstances should they be treated like a Las Vegas marriage, to be annulled when they become burdensome or inconvenient.

Vacating long-standing convictions for strategic purposes also serves to erode public confidence in the criminal justice system.  If the process is perceived to be readily manipulable,

---

[11] The Court notes that it would impose the same sentence as a non-guideline sentence under 18 U.S.C. § 3553(a).  In particular, the sentence imposed protects the public from further crimes by defendant; provides him with necessary mental health treatment; promotes respect for the law; provides just punishment for the offense; and affords adequate deterrence to criminal conduct.

or even dishonest, the damage to that confidence is likely to be substantial indeed.

A Judgment and Commitment Order imposing sentence in accordance with the foregoing memorandum will follow.


/s/ F. Dennis Saylor
F. Dennis Saylor IV
Dated:  April 16, 2007          United States District Judge